COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
Docket No. 99470

04cv10814 PBS

COMMONWEALTH )
)
v. )
)
ALLEN SCOGGINS )
)

## DEFENDANT'S NEW TRIAL MOTION

Pursuant to Rule 30(b) of the Massachusetts Rules of Criminal Procedure, the defendant Allen Scoggins moves the Court for an order granting him a new trial on the grounds that his conviction was obtained in violation of the Constitution of the United States, the Constitution of the Commonwealth of Massachusetts, and the laws of the Commonwealth of Massachusetts and on the further ground that it appears that justice was not done at the defendant's trial. Specifically, the defendant's right to confront the witnesses against him was violated where hearsay was introduced at trail without an opportunity to cross-examine the declarant. Moreover, the defendant was denied his right to effective assistance of counsel where trial counsel's failure to fully investigate the case prior to trial resulted in the introduction of damaging hearsay against the defendant and prevented the defendant from impeaching the key witness with inducements made by the Commonwealth.

## STATEMENT OF THE CASE

The defendant was convicted of first degree murder for the killing of Ishmael Rivera largely on the basis of hearsay statements that were introduced through the testimony of Barbara

1

Holbrook. The Commonwealth's theory was that the defendant had called for a taxi cab with the intention of robbing the driver. According to the Commonwealth's theory, at some point during the ride the defendant decided to kill the cab driver and did so, shooting him three times. The Commonwealth sought to bolster the weakness of its circumstantial case with the testimony of Ms. Holbrook. Ms. Holbrook testified that she heard the defendant make several incriminating statements about the incident that essentially amount to a confession to first degree murder.

After the trial, the defendant learned that Ms. Holbrook had not personally heard the defendant make any incriminating statements about the incident. All of the statements that she testified to at trial had been told to her by her then-boyfriend Vernon Campbell. Ms. Holbrook was not contacted by the defendant's trial counsel or by his investigator prior to trial. Had she been contacted by the defense, Ms. Holbrook would have told them that she had not personally heard the defendant make any incriminating statements. In addition, Ms. Holbrook had been threatened by the Commonwealth and only testified as she did because of that threat.

As it is now apparent that the conviction for first degree murder rests largely on inadmissable hearsay and that this hearsay was admitted due to counsel's failure to fully investigate this matter prior to trial, a new trial must be granted.

I.     **Procedural History.**

On June 9, 1997, the defendant was indicted for the May 16, 1997 murder of a cab driver in Brockton. Attorney Kenneth J. Elias was appointed to represent the defendant. He was tried before a jury (Barrett, J., presiding) beginning on December 14, 1998. The case went to the jury on all three theories of first degree murder, second degree murder, and voluntary manslaughter based on provocation and sudden combat. The defendant was found guilty of first degree murder

2

under theories of deliberate premeditation and felony murder. The defendant filed a timely appeal and the case was entered in the Supreme Judicial Court ("SJC").

Attorney Jeffrey Baler was appointed to represent the defendant on direct appeal. On September 5, 2000, after the briefing was complete but before oral arguments, the defendant filed a pro se motion to "withdraw counsel and appeal brief." The SJC refused to accept the motion from the defendant as he was represented by counsel. On September 18, 2000, Attorney Baler filed a motion to withdraw. The SJC denied the motion to withdraw, but granted the defendant an opportunity to file a pro se supplemental brief. The defendant subsequently filed a pro se supplemental brief on November 24, 2000

On November 29, 2001, before the case had been argued, the defendant filed a pro se motion for new trial which was referred to the Superior Court. The defendant sought the appointment of counsel for his pro se motion for new trial, but counsel was not appointed. The defendant also filed a pro se motion for funds to hire a private investigator. This request was also denied. In his pro se motion for new trial the defendant raised three issues: ineffective assistance of counsel due to counsel's failure to call certain witnesses at trial; sufficiency of the evidence; and prosecutorial misconduct. The pro se motion for new trial was denied by Judge Patrick Brady (Barret, J., having retired) on October 25, 2002. Judge Brady found that there were no affidavits from the proposed witnesses, defense counsel, or defense counsel's investigator to support the ineffective assistance of counsel claim. The defendant filed a timely notice of appeal and the matter was joined with his direct appeal.

The SJC affirmed the conviction and the denial of the motion for new trial in a decision issued on June 18, 2003. Commonwealth v. Scoggins, 439 Mass. 571 (2003).

The defendant has since obtained counsel to assist in the investigation and preparation of the instant motion for new trial.

Although this is not the defendant's first motion for new trial, this Court must address the merits of this motion. First, this motion is based on the newly discovered evidence that Ms. Holbrook did not hear the defendant make any statements about the shooting. Second, the defendant had sought the appointment of counsel and funds for an investigator in connection with his first motion for new trial. Third, the failure to raise these claims earlier is due to prior counsel's ineffectiveness. Fourth, and perhaps most important, even if a claim is waived, it must be considered: the difference is in the standard of review to be applied. Commonwealth v. Randolph, 438 Mass. 290, 293-2094 (2002).

## II.    The evidence at trial.

In the early morning hours of May 16, 1997, Mr. Rivera, a cab driver in Brockton, MA, was shot to death shortly after picking up a fare. The decedent was shot three times (Tr. II: 144). He then walked a short distance from the cab before collapsing (Tr. II: 80-84). His pulse stopped within a few minutes and he was pronounced dead shortly thereafter (Tr. II: 51-52). According to the medical examiner, each of the wounds would have been rapidly fatal (Tr. II: 147, 150, 152).

The cab was found on a lawn with the engine running and the lights on (Tr. II: 61). The trip sheet kept by the driver indicated that his last pick up was from 52 Wyman Street (Tr. II: 109). The driver had apparently stopped the meter – which indicated a fare of $3.00 – and begun to enter the fare, having written the number two (Tr. II: 109; Tr. III: 85). The cab driver's boss drove from Wyman Street to where the cab was located and testified that the fare was $2.80 (Tr.

4

II: 110). The Commonwealth suggested that the fare had gone up to $3.00 when it rolled onto the lawn.

The cab driver had been dispatched to 52 Wyman Street to pick up a man and take him to 65 West Elm Street (Tr. II: 123-125, 127). The man had called the taxicab company from a payphone. The police investigation revealed that there was no 52 Wyman Street and that 65 Elm Street is a church (Tr. III: 85). The defendant was identified by two individuals as the man seen entering a taxi cab on Wyman Street shortly before the shooting (Tr. II: 252, 254, 257, 259).

After the shooting, the defendant moved to South Carolina (Tr. III: 123-124). In South Carolina, the defendant often visited with his uncle Vernon Campbell and Mr. Campbell's then-girlfriend Ms. Holbrook (Tr. III: 121-122, 124). It was known to Ms. Holbrook that the defendant was wanted in Massachusetts. During July of 1997, Ms. Holbrook went to the police in South Carolina to file a complaint against Mr. Campbell relating to a domestic dispute (Tr. III: 136-137). While talking with the police, she indicated that she knew where the defendant was (Tr. III: 137).

At trial, Ms. Holbrook testified that she heard the defendant make statements about what happened in the cab. Ms. Holbrook testified that she heard the defendant "say something about a cab driver in Massachusetts" (Tr. III: 127), "talk about a murder" (Tr. III: 128), say "that he called a cab to go – he didn't say pacific (sic) destination. He was going to stick up the cab driver. The cab driver got scared, tried to call the police; but the cab driver was going to jump out the car. And [the defendant] just got scared, and he jumped out the car and shot him" (Tr. III: 128). Ms. Holbrook also testified that the defendant said that "he couldn't take cabs anymore" (Tr. III: 131).

Following his arrest, the defendant gave a lengthy statement in which he admitted to shooting the cab driver. According to the defendant, he was drunk when he entered the cab (Def. Statement p. 36). During the ride, the cab driver made a wrong turn which ignited an argument (Def. Statement pp. 36-38). The argument escalated into a physical confrontation (Def. Statement pp. 38). During this fight, the defendant pulled out a hand gun (Def. Statement pp. 38-39, 44-45). The cab driver grabbed at the gun and the "gun started going off" (Def. Statement pp. 38-39, 45) The defendant denied that he intended to rob or kill the cab driver (Def. Statement pp. 47, 51; Def. Statement, side three p. 1). The defendant denied talking about the night of the shooting with anyone (Def. Statement side three, p. 5).

### III. Evidence discovered after the decision on the direct appeal.

After the decision from the SJC, the defendant (through present counsel) was able to contact Ms. Holbrook and secure an affidavit from her. Ms. Holbrook indicated that she did not hear the defendant make any incriminating statements (Aff. of Ms. Holbrook, ¶ 7). All of the statements that Ms. Holbrook attributed to the defendant at trial had been told to her by Mr. Campbell (Aff. of Ms. Holbrook, ¶ 8). Prior to trial, Ms. Holbrook had told the assistant district attorney that she had not heard the defendant make any statements (Aff. of Ms. Holbrook, ¶ 5). The assistant district attorney and the police told her to testify to what she knew (Aff. of Ms. Holbrook, ¶ 5). The police in Massachusetts told Ms. Holbrook that if she did not testify she would be charged with perjury or as an accomplice (Aff. of Ms. Holbrook, ¶ 6). At trial, Ms. Holbrook testified to what Mr. Campbell had told her because she was afraid she would go to jail if she did not (Aff. of Ms. Holbrook, ¶ 11). The police in Massachusetts had helped Ms. Holbrook obtain public housing in three months even though the waiting list at the time was over

one year long (Aff. of Ms. Holbrook, ¶ 4).

Ms. Holbrook was not contacted by an attorney or anyone working on the defendant's behalf prior to trail (Aff. of Ms. Holbrook, ¶ 9). Had she been contacted by someone working for the defendant, she would have told that person that she had not heard the defendant make any statements about the shooting (Aff. of Ms. Holbrook, ¶ 10).

Attorney Elias, has provided an affidavit indicating that he neither spoke with Ms. Holbrook prior to trial nor instructed Mark W. Chauppette, his licensed private investigator, to contact her (Aff. of Attorney Elias, ¶¶ 6-8). Similarly, Mr. Chauppette, has provided an affidavit that he was not asked to contact Ms. Holbrook nor any other potential witnesses in South Carolina (Aff. of Mr. Chauppette, ¶¶ 5-7). Mr. Chauppette was only asked to contact the witnesses who allegedly saw Mr. Scoggins enter the cab on the night of the shooting and to perform a search for pretrial publicity about the incident (Aff of Ms. Chauppette, ¶¶ 3-4).

## ARGUMENT

I. **THE DEFENDANT IS ENTITLED TO A NEW TRIAL AS THE ERRONEOUS ADMISSION OF HIGHLY PREJUDICIAL HEARSAY VIOLATED THE DEFENDANT'S RIGHT TO CONFRONT THE WITNESSES AGAINST HIM AND GAVE RISE TO A SUBSTANTIAL RISK OF A MISCARRIAGE OF JUSTICE.**

Commonwealth introduced several highly prejudicial statements allegedly made by the defendant through the testimony of Ms. Holbrook. The defendant has since learned that Ms. Holbrook did not hear the defendant make these statements, but rather, she was told by Mr. Campbell that the defendant made them. The introduction of the out-of-court statements of Mr. Campbell to the effect that the defendant had essentially confessed to first degree murder violated the defendant's confrontation rights as he had no opportunity to cross-examine Mr. Campbell.

7

Commonwealth v. Gonsalves, 445 Mass. 1, 13 (2005); Crawford v. Washington, 541 U.S. 36 (2004). The introduction of these hearsay statements is also an error under the longstanding hearsay law in Massachusetts as there is no applicable exception which would allow for their admission. Commonwealth v. Diaz, 426 Mass. 548, 551-552 (1998).

> A. **The statements Ms. Holbrook attributed to the defendant were actually the hearsay statements of Mr. Campbell, the introduction of which violated the defendant's confrontation rights.**

The statements that Ms. Holbrook attributed to the defendant at trial were not in fact the defendant's statements. Ms. Holbrook did not hear the defendant make any statements about the killing of Mr. Rivera. Everything Ms. Holbrook knew about the shooting had been told to her by Mr. Campbell.

In Crawford, the Supreme Court held that the admission of testimonial hearsay violates the defendant's confrontation rights under the Sixth Amendment. Crawford, 541 U.S. at 52. Certain types of statements, such as prior testimony and statements made during police interrogation are testimonial in fact. Id. However, the admission of statements that are not per se testimonial can violate the defendant's confrontation rights if the in the circumstances in which the statements were made they are testimonial in fact. As Mr. Campbell's statements to Ms. Holbrook are testimonial in fact, their introduction at trial violated the defendant's confrontation rights.

In Gonsalves, the Supreme Judicial Court ruled that, "[i]f the statement is not per se testimonial, the judge still must conduct a further fact-specific inquiry regarding whether a reasonable person in the declarant's position would anticipate the statement's being used against the accused in investigating and prosecuting the crime". Id. 445 Mass. at 13. If so then the

8

statement is inadmissible unless the declarant testifies or was previously subjected to cross-examination. This is true regardless of whether the statement would have previously been admissible under the rules of hearsay. Id. at 14 ("the confrontation clause trumps the common-law rules of evidence"). As a reasonable person in Mr. Campbell's position would anticipate his statements being used against the accused in investigating and prosecuting the crime, his statements were inadmissable and should have been excluded.

While the defendant was in South Carolina, his family was aware that he was a suspect in the killing of Mr. Rivera. It was during this time that Mr. Campbell told Mr. Holbrook that the defendant had made several statements about the shooting. Given the seriousness of the incident, it would have been unreasonable for Mr. Campbell to assume that his statements would not eventually be relayed to the police. Thus, a reasonable person in Mr. Campbell's position would anticipate that his statements would be used against the defendant in investigating and prosecuting the killing of Mr. Rivera. Accordingly, his statements were testimonial in fact and it was error to admit them. As the error was not harmless beyond a reasonable doubt, this court must either grant a new trial or reduce the verdict to voluntary manslaughter. Chapman v. California, 386 U.S. 18, 23-24 (1967). As this case turned on the defendant's intent when he shot Mr. Rivera, the erroneous admission of his statements that he intended to rob the cab driver but got scared and shot him was extremely prejudicial. The statement that he intended to rob the cab driver alone could have swayed the jurors to find first degree murder on the felony murder theory. Moreover, that statement made it less likely that the jurors would have credited the defendant's version of that night and made it more likely that they would find premeditation. Where the erroneous admission of hearsay violated the defendant's right to confront the witnesses against

him, this Court must either reduce the verdict or order a new trial.

### B. The admission of the hearsay statements through Ms. Holbrook's testimony gave rise to a substantial risk of a miscarriage of justice.

Even if this court finds that the introduction of the hearsay statements did not violate the defendant's confrontation rights, a new trial or a reduction in the verdict is still required. As Ms. Holbrook did not hear the defendant make any statements about the shooting of Mr. Rivera, but rather had been told this information be Mr. Campbell, her testimony was classic hearsay and should have been excluded. The erroneous admission of this highly prejudicial evidence gave raise to a substantial risk of a miscarriage of justice. Commonwealth v. Freeman, 352 Mass. 556, 563-564 (1967).

The Supreme Judicial Court has established a four-factor test to determine whether an error gives rise to a substantial risk of a miscarriage of justice requiring reversal even where there was no objection:

> An error creates a substantial risk of a miscarriage of justice unless we are persuaded that it did not 'materially influence[]' the guilty verdict. In making that determination, we consider the strength of the Commonwealth's case against the defendant (without consideration of any evidence erroneously admitted), the nature of the error, whether the error is 'sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error,' and whether it can be inferred 'from the record that counsel's failure to object was not simply a reasonable tactical decision.'

Commonwealth v. Alphas, 430 Mass. 8, 13 (1999) (internal citations and footnotes omitted). Applying these factors to the facts of this case reveals that reversal is required. As the defendant's intent was the sole issue at trial, the introduction of statements essentially amounting to a confession presents a palpable risk that the jury's verdict was swayed by the erroneously admitted hearsay.

First, the Commonwealth's case against the defendant was not overwhelming. Apart from the defendant's statement introduced through Ms. Holbrook's testimony, there was no evidence of an intent to rob. Ms. Holbrook's testimony gave critical supported to the Commonwealth's request to instruct the jury on the theory of felony murder. Moreover, Ms. Holbrook's testimony also strengthened the Commonwealth's case for premeditated murder. Without her testimony the Commonwealth's evidence merely indicated that the defendant shot the decedent three times at the end of a cab ride. Given the jury also heard the defendant's version of the events indicating that he shot the decedent unintentionally after a struggle during which the decedent grabbed the gun, the jury had to decide the difficult question of what the defendant's intention was at the time of the shooting. The Commonwealth's case on that issue was far from overwhelming.

Second, the error resulted in the erroneous admission of a confession by the defendant. A confession by the defendant is highly damaging to the defense. Unless there is overwhelming evidence of the defendant's guilt apart from the erroneously admitted confession, the error will not be harmless. Commonwealth v. Hosey, 368 Mass. 571, 579 (1975) (despite substantial circumstantial evidence pointing to the defendant as the perpetrator of the crime, the defendant's statement was "incriminating in any meaningful sense of the word" and its erroneous admission was not harmless error).

Third, the error was sufficiently significant to make plausible an inference that the result might have been otherwise but for the error. As discussed above, the key issue for the jury to decide was what was the defendant's intent when he shot the decedent. In closing arguments, the defendant asked the jury to find voluntary manslaughter (Tr. IV: 22-23). However, having been told by Ms. Holbrook that the defendant had intended to rob the decedent but got scared and shot

him there was very little for the jury to debate. The Commonwealth made substantial and repeated use of Ms. Holbrook's testimony during its closing argument (Tr. IV: 41-44, 53). It is plausible that the jurors were swayed by Ms. Holbrook's testimony and that without it they would have found a lower degree of culpability.

Fourth, the record offers no indication that the failure to object to the hearsay testimony was a tactical decision. It was only after the direct appeal was decided by the Supreme Judicial Court that the defendant learned that Ms. Holbrook had not heard the defendant make any incriminating statements about the killing. Moreover, as discussed in section II below, the manner in which trial counsel investigated Ms. Holbrook and handled his cross-examination of her amounts to ineffective assistance of counsel.

Where the erroneous admission of highly prejudicial hearsay gave rise to a substantial risk of a miscarriage of justice, this Court must either reduce the verdict or order a new trial.

II.  **THE DEFENDANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT AND BY ARTICLE TWELVE OF THE MASSACHUSETTS DECLARATIONS OF RIGHTS.**

Attorney Elias's performance was constitutionally deficient as his failure to fully investigate the case prior to trial resulted in highly prejudicial hearsay being introduced against the defendant at trial. The main witness against the defendant was Ms. Holbrook who testified that she heard the defendant make statements that essentially amounted to a confession to murder. Trial counsel did not interview this witness prior to trial and did not ask his investigator to do so. Had Ms. Holbrook been interviewed by the defense prior to trial, the defendant would have learned that in fact Ms. Holbrook did not hear the defendant make any incriminating statements, but rather she had been told those statements by her then-boyfriend Mr. Campbell. The defendant

12

did not receive effective assistance of counsel.

Article 12 of the Massachusetts Declaration of Rights and the Sixth Amendment of the Constitution of the United States as incorporated by the Fourteenth Amendment guarantee the right of a criminal defendant to effective assistance of counsel at each critical stage of the proceedings. In Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), the Supreme Judicial Court established a two part inquiry to determine the constitutional adequacy of counsel's performance: 1) whether, "there has been serious incompetency, inefficiency, or inattention of counsel - behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," and 2) whether, "it has likely deprived the defendant of an otherwise available, substantial ground of defense." See also Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994); Strickland v. Washington, 466 U.S. 668, 687 (1984). In other words, if "better work [by defense counsel] might have accomplished something material for the defense," a new trial should be ordered. Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977). See also Commonwealth v. Tucceri, 412 Mass. 401, 413 (1992). This Court must consider the cumulative impact of trial counsel's errors and omissions. See Commonwealth v. Childs, 23 Mass. App. Ct. 33, 38 (1986).

> A. **Elias's failure to fully investigate this matter amounts to behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer.**

Counsel has a duty to fully investigate the case prior to trial. Commonwealth v. Cabal, 48 Mass. App. Ct. 179, 182 n.2 (1999). Counsel's failure to investigate the only defense falls beneath the level of competency expected from reasonably fallible lawyers. Commonwealth v. Haggerty, 400 Mass. 437, 442 (1987). In this case, counsel did not fulfill his duty.

Attorney Elias did not interview Ms. Holbrook prior to trial, nor did he ask his private investigator to do so. His failure to interview Ms. Holbrook prevented him from filing a motion in limine to prevent her from testifying to hearsay statements and otherwise left him unprepared to cross-examine her.

### B. Elias failed to perform an adequate pretrial investigation deprived the defendant of an available, substantial defense.

Had Attorney Elias either interviewed Ms. Holbrook or had his investigator to do so, the defendant would have learned several important facts that could have been used at trial. First, the defendant would have learned that Ms. Holbrook had not heard the defendant make any statements about the shooting and would have been able to keep her from relaying hearsay to the jury. Second, the defendant would have learned that the police had assisted her in jumping the line, so to speak, for public housing; cutting her wait time form over one year down to just three months. Finally, the defendant would have learned that Ms Holbrook had been told that she would be charged with perjury or as an accomplice if she did not testify against the defendant.

Had the defendant known prior to trial that Ms. Holbrook had not personally heard the defendant make any statements about the shooting, he could have filed a pretrial motion in limine to exclude her hearsay testimony. Had such a motion been filed, all of the statements she attributed to the defendant at trial would have been excluded. The failure to exclude this evidence severely prejudiced the defendant.

The defendant did not deny that he shot the decedent. Rather, the defense at trial was that the decedent was shot during an argument that erupted during the cab drive. The argument escalated into a physical confrontation. During the scuffle, the defendant pulled out a handgun he was carrying and when the decedent grabbed the gun, it started going off. The defendant denied

14

intending to shoot the decedent and denied that he intended to rob the decedent.

The Commonwealth countered the defendant's statement with the testimony of Ms. Holbrook. Ms. Holbrook testified that she heard the defendant say that he was planning on robbing the cab driver, but during the ride he got scared and shot the cab driver (Tr. III: 128).

As discussed above, Ms. Holbrook's testimony provided critical support to the felony murder theory. Without her testimony there would have been insufficient evidence as a matter of law to allow that theory to go to the jury. Moreover, her testimony also strengthened the Commonwealth's otherwise weak case on premeditated murder. Her testimony told the jurors that he entered the cab planning to commit a crime. That testimony conflicted with the defendant's statement that he did not intend to commit a crime but that the shooting resulted form a rapidly escalating argument over the driver having made a wrong turn. Without having heard that the defendant intended to rob the cab driver but got scared and shot him, it is far more likely that the jurors would have returned a verdict of guilty of second degree murder or voluntary manslaughter. The Commonwealth made repeated and substantial use of Ms. Holbrook's testimony during its closing argument. Commonwealth v. Alvares, 433 Mass. 93, 104 (2000) ("Where, as here, the very matter as to which defense counsel has been ineffective becomes one of the linchpins of the prosecutor's closing, the defendant has met her burden of showing prejudice.").

Where the defendant was denied a substantial, available defense by trial counsel's failure to fully investigate this case prior to trial, this court must either grant a new trial or reduce the verdict.

**WHEREFORE,** the defendant requests this court grant him a new trial or reduce the verdict. As this motion and the supporting materials (the trial transcript, the defendant's statement, and the affidavits of Barbara Holbrook, Kenneth Elias, and Mark Chauppette) present a substantial issue, the defendant requests an evidentiary hearing on all issues raised in this motion.

                                          ALLEN SCOGGINS
                                          By his attorney,

                                          Alan D. Campbell
                                          B.B.O. No. 634188
                                          P.O. Box 131
                                          Brookline, MA 02446
                                          (617) 735-8913

Date: November 30, 2007

### CERTIFICATE OF SERVICE

I certify that on this day I served a copy of this motion, along with the supporting affidavits, by first class mail, postage pre-paid, upon Robert C. Thompson, District Attorney's Office, 32 Belmont Street, Brockton, MA 02301.

                                          Alan D. Campbell