COMMONWEALTH OF MASSACHUSETTS                04-cv10814 PBS

PLYMOUTH, ss.                       SUPERIOR COURT DEPARTMENT
                                    OF THE TRIAL COURT
                                    No. 99470

```
                              )
COMMONWEALTH                  )
                              )
                              )
      V.                      )
                              )
                              )
ALLEN SCOGGINS                )
                              )
```

### MEMORANDUM IN SUPPORT OF GROUNDS FOR RELIEF RAISED IN DEFENDANT'S AMENDED MOTION FOR NEW TRIAL

The defendant Allen Alston adopts the statement of the case and Procedural History stated within Defendant's New Trial Motion filed by Counsel.

#### I. JURISDICTION

The defendant, allen Alston, moves this Honorable Court pursuant to RULE 30(a) and (b) of the Mass. R. Crim. P. and RULE 25(b) for an order granting post-conviction relief in the form of a new trial or other appropriate relief.

#### II. FACTS

During the early morning of May 16, 1997, Mark Brown, who lived on West Elm Street in Brockton heard what appeared to be five to seven gun-shots in rapid succession (Tr. II: 72-74). Mr. Brown telephoned police (Tr. II: 78).

At approximately 1:20 am., Brockton Firefighter William Dube responded to West Elm St. where he observed Ishmael Rivera lying on the side of the road (Tr. II: 48-50,59).

He had been shot three times (Tr. II: 144). His eyes closed and his pulse stopped shortly thereafter (Tr. II: 51-52).

Brockton police officer Richard Gaucher went to the adjacent Montgomery St., where he found broken glass and a seat cushion (Tr. II: 60), further down the street he found a Cowan's taxi-cab that had rolled onto a front lawn (Tr. II:61). The engine was running and the lights were on. The driver side window was "smashed out" and there were holes in the rear window (Id). State Trooper ballistician Michael Arnold found a spend projectile on the rear floor of that taxi (Tr. II: 173-174) along with broken glass on the trunk lid (Tr. II: 205), and another spent projectile was found on the sidewalk (Tr. II: 182-183). A third projectile was recovered from the decedent's chest (Tr. II: 186) and Trooper Arnold believed that these projectiles were fired from the same weapon (Tr. II: 191).

State Trooper Patricia Behan observed the taxi and noted that the microphone was outside the front door (Tr. II: 212).

George Cowen of Cowen's Taxi and Limousine testified that the decedent worked for the company (Tr. II: 97) and generally, a cab driver would keep his radio microphone in his lap (Tr. II: 105).

There was no indication that this occurred on the night in question (Tr. II: 115). Drivers were trained to leave the taxi in gear even when stopped (Tr. II: 107). A Picture of the dashboard of the decedent's taxi indicated that the timer was off (Tr. II: 108), the decedent's trip sheet indicated

that his last pick-up was from 52 Wyman Street (Tr. II: 109), the sheet indicated that the decedent stopped the meter and began to enter the fair with the number two (Tr. II: 109). Mr. Cowen drove from Wyman Street to Montgomery Ave. and noted that the fare was $2.80 (Tr. II: 110).

Larry Chimielewski, the dispatcher for Cowen's taxi, testified at approximately 12:45 am on May 16, 1997, he received a telephone call from a male who asked to be picked up at 52 Wyman Street and taken to 65 West Elm Street (Tr. II: 123-125). The decedent was dispatched for this call at 1:09 am (Tr. II: 127). At approximately 1:14 am the decedent called in that he was en route to 65 West Elm Street (Tr. II: 129(, however, the taxi turned down a street that was not on this route (Tr. II: 134). Mr. Chimielewski also testified that he worked as a taxi driver and that he had driven Mr. Scoggins on a number of occasions without any major incident (Tr. II: 131).

Medical examiner, James Weiner testified that the decedent was pronounced dead on May 16, 1997 at 1:17am (Tr. II: 141-143). Doctor Weiner found three gunshot wounds going through the body (Tr. II: 144) tesifying that each wound would have been "rapidly fatal" (Tr. II: 147, 150, 152).

Detective Pontieri testified regarding his interaction with the defendant (Tr. II: 29-40), and further testified that a subsequent search by police found a siler revolver in the same room as the defendant's identification (Tr. II: 44-51).

On August 26, 1997, Ms. Holbrook went to the local police department in south Carolina and made a complaint against Mr. campbell and at the time she told the police that the defendant was there, she was mad at Mr. Campbell at the time and also told the police that Mr. Campbell had told her that the defendant the gun he used in Massachusetts and had brought it to South Carolina with him and that Mr. Campbell had told her it was a silver revolver. (Tr. III: 136-140).

At pretrial defendant's trial attorney told the court that vernon Campbell is extremely important to the defendant's defense.

## ARGUMENT

II.(C)
    Ineffective Assistance of Counsel was rendered under the Sixth Amendment to the United States Constitution and Article Twelve of the Massachusetts Declaration of Rights when Trial Counsel failed to file a discovery Motion under Brady v. Maryland or to file a Motion requesting whether any offer of leniency, inducements or rewards were given to any witness.

The harm done to the defendant by counsel's failure to even file general request is that the defense did not learn of the evidence that would have clearly impeached Ms. Holbrooks credibility and demonstrated to the jury that Ms. Holbrook had a bias, a reason to get on the stand and point a finger at the defendant and attribute statements to him that he never uttered.

Had the jury heard the evidence that the Police who are a part of the prosecution gave a material inducement

-5-

to Ms. Holbrook by having her moved from being back more than a year on to public housing waiting list to getting public housing in three months; they may have chosen to disregard her testimony entirely and found the defendant not guilty. The with-held inducement was detrimental in this first degree murder case.

Defense counsel's decision not to file a discovery motion, motion for inducements and/or rewards and his decision not to investigate or interview Ms. Holbrook to determine if her statement was accurate was unreasonable and can not be deemed a trial tactic. There was no benefit to the defendant in counsel doing this. The failure to file a simple motion as whether any promises or inducements were made to her in exchange for her statement and testimony was unreasonable, especially where his client denied having made any statements to her or in her presence. An ordinary fallible lawyer would have at least undertaking an investigation or interviewed the witness.

A simple discovery motion would have brought about disclosure of "any facts of an exculpatory nature within the possession, custody, or control of the prosecution," Mass. R. Crim. P. 14(a)(I).

The error of counsel allowed the jury to be mislead and further allowed the prosecutor to tell the jury Ms. Holbrook had no reason had no reason or lie, to be biased and held her credibility as unassailable. See Arguments III (C),(D).

The errors allowed the jury to be presented with a misleading picture of the evidence, and cast a "real doubt on the justice of the conviction." Commonwealth v. Grace, 397 Mass. 303, 305, 491 N.E.2d 246 (1986).

There is a reasonable probability this evidence, if presented to the jury actiong "conscientiously...and impartially, would have led the jury to have a "reasonable doubt" respecting guilt. Strickland v. Washington, 466 U.S. 668, 695, 104 S.Ct. 2052, 2068 (1984). A New Trial is warranted as a miscarriage of justice has occurred.

### III PROSECUTORIAL MISCONDUCT

(A) A NEW TRIAL IS REQUIRED WHERE THE PROSECUTION WITHHELD EXCULPATORY EVIDENCE THAT IT PROVIDED AN INDUCEMNET TO IT"S CASE-IN-CHIEF WITNESS BARBARA HOLBROOK TO OBTAIN HER TESTIMONY AGAINST THE DEFENDANT WHICH DENIED THE DEFENDANT A FAIR TRIAL AND DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE TWELVE OF THE MASSACHUSETTS DECLARATION OF RIGHTS.

In the present case the prosecution withheld exculpatory evidence that it had provided a material service to it's critical witness Barbara Holbrook in exchange for her testimony against Mr. Scoggins at his first degree murder trial.

Ms. Holbrook affirms in her sworn affidavit that the State Police first threatened her with criminal prosecution then provided her with early housing in exchange for her to testify against the defendant. It is now without doubt that understandings, agreements, promises, or any similar arrangements between the government and a significant government

witness is exculpatory evidence that must be disclosed. Commonwealth v. Gilday, 382 Mass. 678, 415 N.E.2d 797 (1980); Commonwealth v. Hill, 432 Mass. 709, 739 N.E.2d 670, 679 (2000).

The Commonwealth may very well argue that they did not know what the State Police had done on the Commonwealth's behalf to have Ms. Holbrook testify, however, this argument fails for the prosecution has a duty of inquiry. See Kyle v. Whitley, 514 U.S. 419, 438, 115 S.Ct. 1555 (1995). A prosecutor's obligation extends to information in possession of a person who has participated in the investigation or evaluation of the case and has reported to prosecutor's office concerning the case. Commonwealth v. Daye, 411 Mass. 719, 733, 587 N.E.2d 194 (1992); Commonwealth v. St. Germain, 381 Mass. 256, 261 Fn.8, 408 N.E.2d 1358 (1980); Commonwealth v. Martin, 427 Mass. 810, 696 N.E.2d 904, 909 (1998). Kyle v. Whitley, supra at 437, 115 S.Ct. 1555 ("The individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.").

Absolute proof of "materiality" is not required - a defendant need only provide "a substantial basis for claiming materiality exists." Commonwealth v. Vierira, 401 Mass. 828, 833, 519 N.E.2d 1320 (1988). Hand and glove with materiality, the evidence must also demonstrate that it is "favorable" or "exculpatory" to a defendant. "Exculpatory" does not mean that the subjects proofs need be sufficient to exonerate an accused. Nowhere in the law is it required that such

evidence must categorically vindicate a defendant, "Favorable" evidence may take many forms - it includes, although is not limited to: "...evidence which provides something significant to the defendant's case, whether it furnishes corroboration of the defendant's story, calls into question a material, although not indispensable, element of the prosecution's version of the events, or challenges the credibility of a key prosecution witness." Commonwealth v. Gregory, 401 Mass. 437, 442, 517 N.E.2d 454 (1988).

Here the evidence witheld from the defense directly bore on and affected the jury's assessment of the witnesses credibility, the witnesses believability, whether the witness had any reason bias or reason to lie or make statements and attribute them to the defendant. See Issue III(B)(C) and (D).

"When a possibility of bias exists, however, even if remote, the evidence is for the jury to hear and evaluate." Commonwealth v. Henson, 394 Mass. 584, 587, 476 N.E.2d 947, 950-51 (1985); see Commonwealth v. Fetzer, 19 Mass. App. Ct. 1024, 1025, 476 N.E.2d 981-983 (1985)(Favors which a witness receives from the party for whom the witness testifies cannot be deemed irrelevant to the existence of bias).

The Prosecution cannot claim ignorance of what the Police did in exchange for Ms. Holbrook pointing a finger at the defendant and attributing hearsay statements as statements made by him. The prosecutor is the party who is accountable for non disclosure of evidence. Giglio v. United States,

405 U.S. 150, 154 (1972). The knowledge of the government agencies connected with the investigation is imputed to the prosecutor. see United States v. Avellino, 136 F.3d 249, 255 (2nd Cir. 1998); United States v. Kearns, 5 F.3d 1251, 1254 (9th Cir. 1993)(The incompetence of the police in not informing Prosecutor of the existence of a written agreement of leniency for cooperating witness is imputed on the prosecutor and amounts to a Brady violation where not disclosed).

The materiality and prejudice is obvious, the defendant was denied due process and denied a fair trial under both state and federal constitutions. The jury was mislead and duped to believe it was doing it fact finding duties based on competent evidence, when in fact it was not.

In Commonwealth v. Hill, 739 N.E.2d 670 (2000) the court reversed a case analogous to this case, where the prosecutor failed to disclose an arrangement made with a critical witness who provided motive and who the prosecutor in closing suggested to the jury the witnesses credibility was unassailable even though the jury had no knowledge an agreement was reached between the prosecution and the witness.

Even more was done in this case. The defendant told the police the cab picked him up, he had a loaded gun on his person at the time, an argument and scuffle ensued between the defendant and the cab driver when the cab driver thought the defendant was not going to pay the fare. During the scuffle the defendant pulled out the gun, the victim grabbed

-10-

the gun and it kept going off. There was no evidence of robbery or attempted robbery at the scene. All of the victims money was on his person where it was suppose to be and there was no sign that his money had been attempted to be taken.

Only the testimony of Barbara holbrook provided motive and the basis for the conviction for felony murder and premeditated murder which otherwise did not exist.

The evidence that was withheld and the inducement that was kept unknown from the defense and jury denied the defendant a fair trial and due process of law. A substantial likelihood of a miscarriage of justice has occurred which requires and evidentiary heraing and a new trial.

    (B) THE FAILURE OF THE PROSECUTION TO DISCLOSE IT HAD THREATENED THE MAIN WITNESS BARBARA HOLBROOK WITH CRIMINAL CHARGES OF PERJURY IF SHE DID NOT TESTIFY AGAINST THE DEFENDANT AND FURTHER PROVIDED HER WITH AN INCENTIVE AND INDUCEMENT TO TESTIFY FALSELY BY OBTAINING EARLY PUBLIC HOUSING AND MISLEAD THE JURY, VIOLATING THE DEFENDANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE TWELVE OF THE MASSACHUSETTS DECLARATION OF RIGHTS.

The prosecution's case-in-chief witness Barbara Holbrook in her sworn affidavit affirms that the State Police threatened to charge her with perjury or as an accomplice if she did not testify against the defendant Allen Scoggins. After

scaring the witness with being charged with a criminal offense the prosecution manipulated the witness - in exchange for her cooperation the State Police helped her get public housing, accelerating her from being on over a years waiting list to getting her public housing in only three months.

This evidence is exculpatory and it being withheld gives rise to a constitutional violation. For a constitutional violation to be established due to the prosecution's failure to make disclosure, '[F]avorable evidence need not be dispositive evidence.' Commonwealth v. Daniels, 445 Mass. 400, 401, 837 N.E.2d 683 (   ).' Although it is not absolutely destructive of the Commonwealth's case or lightly demonstrative of the defendant's innocence', due process requires that the Prosecution disclose to defendant's exculpatory evidence that could materially aid in their defense. Commonwealth v. Tucceri, 412 Mass. 154, 156 (1980)

The Prosecution's duty to make disclosure in this area is straightforward. "[E]vidence tending to impeach the credibilty of a key prosecution witness is clearly exculpatory." Commonwealth v. Hill, 432 Mass. 704, 739 N.E.2d 670 (2000); Commonwealth v. Collins, 386 Mass. 1, 8, 434 N.E.2d 964 (1982). Understanding's agreements, promises, or any arrangements between the government and a significant government witness is exculpatory evidence that must be disclosed. Commonwealth v. Gilday, supra at 675, 415 N.E.2d 797, "any communication that suggests preferential treatment to a key government witness in return for that witness's testimony is a matter that must be disclosed by the Commonwealth." Id at 680.

Ms. Holbrook being given preferential treatment in obtaining early public housing for her cooperation to testify against the defendant surely fits within the gambit of understandings, agreements, promises, or any arrangement and preferential treatment. Ms. Holbrook was the only evidence offered to prove First Degree Murder and Armed robbery and thus is a significant witness to the government/Commonwealth. There was a material arrangement, see Commonwealth v. Collins, supra 386 Mass. at 12.

The United States Supreme Court held in Kyle v. Whitley, supra "The individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." 514 U.S. at 437, 115 S.Ct. 1555. A Prosecutor must disclose exculpatory evidence in her possession or in the possession of the police who investigated the case. Commonwealth v. Tucceri, supra 412 Mass. at 407. Cf. Commonwealth v. Germain, 381 Mass. 256, 261 N.8 (1980) quoting Barbee v. Warden Maryland Penitentiary, 331 F.2d 842, 846 (4th Cir. 1964)(Explaining that [t]he police are also part of the prosecution and the taint in the trail is no less if they, rather than the State's Attorney, were guilty of the nondisclosure.") The intimidation, coercion, inducement and withholding of it by the police and prosecution served to violate the defendant's rights, Fifth and Fourteenth amendments to the United States Constitution and Article Twelve of the Massachusetts Declaration of Rights. See Durley v. Mayo, 351 U.S. 277, 290-291 (1956)

Pursuant to Mass R. Crim. P. Rule 30, "as a general rule any violation of a constitutional right gives rise to presumptive prejudice which normally requires reversal of a conviction, in the absence of an affirmative showing by the Commonwealth that the error was harmless." Commonwealth v. McDonald, 368 Mass. 395, 399 (1977).

Whether the prosecutor personally knew about the threats and inducement is a matter to be determined after a hearing. However, the court can reasonably find duplicity in the prosecutor's actions since Ms. Holbrook swears in her affidavit that she told the police and Assistant District Attorney that she did not hear the defendant make any statements about the case, (Affidavit of Holbrook, paragraph 4) and that everything was told to her by Vernon Campbell.

However, the prosecutor allowed her to testify falsely after encouraging her to do so. "Regardless whether the government has encouraged the false evidence of one of it's witnesses, the prosecutor must advise the court of such false testimony." Commonwealth v. Hill, supra, 739 N.E.2d at 678; citing Gilday, supra 382 Mass. at 166; Commonwealth v. Nelson, 3 Mass. App. Ct. 90, 100-101, 323 N.E.2d 839 (1976). The Court must consider "whether, given a timely disclosure, the defense would have been able to prepare and present its case in such a manner as to create a reasonable doubt that would not otherwise have existed." Commonwealth v. Redding, 382 Mass at 156 (citation ommitted). A hearing is required as the defendant's trial was infected with prejudicial constitutional error, and thereafter  defendant's

-14-

Motion for New Trial should be allowed. See <u>Commonwealth v. Nolan</u>, 373 Mass. 45, 47 (1977).

**(C) AT TRIAL THE PROSECUTOR INTENTIONALLY MISLEAD THE JURY.**

At trial Ms. Holbrook was permitted on direct examination, by the prosecutor, to testify the defendant made incriminating statements to her that amounted to a confession, admitting to attempting to robbing a cab driver and shooting him.

Normally this would be a jury question, an issue left for the jury to decide based upon whether they believed the witness. However this is not a normal run of the mill case, here the prosecutor permitted Ms. Holbrook to mislead the jury and court concerning what she heard and whom she heard it from. In <u>Commonwealth v. Hill</u>, 432 Mass. 704, 739 N.E.2d 670, 678 (2000) the court reaffirmed that "regardless whether the government has encouraged the false evidence of one of it's witnesses, the Prosecutor must advise the court of such false testimony." citing <u>Commonwealth v. Gilday</u>, 382 Mass. 167, 177, 415 N.E.2d 797 (1980).

Ms. Holbrook avers in her sworn affidavit "I told the police and the Assistant District Attorney that I did not hear the defendant make any statements about the case. Everything I knew about the case was told to me by Vernon Campbell. The police and the Assistant District Attorney told me to testify to what I knew."

At this point Ms. Holbrook had already been threatened with criminal prosecution for perjury or as an accomplice if she did testify against the defendant and she was granted