preferential favorable treatment of early public housing. When she was told to testify to what she knew, the threat of being charged as an accomplice or perjury loomed over her head and the loss of early public housing. The improper Prosecutorial pressure tactics made her succumb. She knew what they wanted her to do since she had already told them she "did not hear the defendant make any statements about the case," "Everything [she] knew about the case was told to [her] by Vernon Campbell."

While what Ms. Holbrook was permitted to testify to hearsay, it was nonetheless false and perjurous once the prosecution pressured the witness to take the stand and attribute the statements as coming from the defendant. The advantage to the prosecutor was clear after it allowed it to go uncorrected and used this false material testimony to the prosecutions advantage in closing argument as set-out below.

> "This murder happening in May, we now go to October; and we find the defendant and the police interview Barbara Holbrook. Barbara Holbrook came in this courtroom yesterday. Now barbara Holbrook told you several important basic facts... (Tr. IV: 41) ...Vernon Campbell, the father of Barbara Holbrook's child is this man's uncle. Barbara Holbrook knows his whole family. Do you think she wanted to be here? You saw her crying, miserable. draw from that a reasonable inference which is, would she have any reason to fabricate evidence against him? Why on Earth would she come in here and tell you something that wasn't true? Isn't it evident from her demeanor that what was so unspeakable painful was that she was obliged to come and tell what she knew, damaging though it was?..."(Tr. IV: 42)

> "And Allen talked about the cab driver. And you will recall what she said - and it is your memory that controls - but didn't she say that Allen was going to stick up a cab driver but the driver got scared and tried to call - remember the picture of the microphone hanging out of the door. (Tr. IV: 43) ... So what Barbara Holbrook did ladies and gentlemen was confirm what the police investigation had shown by inference already. Barbara Holbrook told us something else.

-16-

She said that at two different location -- and your memory can control as to the specific addresses, apartments that she told you about -- this defendant talked about taking cabs, and the manner in which he talked about taking cabs was jokingly." (Tr. IV: 44) "But furthermore isn't there a reasonable inference that a man who joked about taking cabs in the presence of Barbara Holbrook is only sorry because he's caught?" (Tr. IV: 53).

The prosecutor mislead the jury and court through the presentation of hearsay false testimony than argued to the jury there was no reason for her "To fabricate evidence [against Mr. Scoggins or for her to] come in here and tell you something that wasn't true." All the while the prosecutor hid from the jury, court and defense the fact the witness had been threatened to be prosecuted with criminal charges and granted an inducement to attribute hearsay as being a confession coming from the defendant.

Had the jury heard this evidence of the witness Ms. Holbrook being threatened with criminal charges than given an inducement, and had the jury known that prior to the threats and inducement Ms. Holbrook had told the police and assistant District Attorney that she had not heard the defendant make any statements about the case and that everything she knew was told to her by Vernon Campbell, the jury may very well have chosen to disregard all of her testimony and returned a different verdict.

The non-disclosure and prosecutorial misconduct denied the defendant due process, a fair trial and fundamental fairness under both State and Federal Constitutions. Fourteenth Amendment to the United States Constitution and Article Twelve of the Massachusetts Declaration of Rights. An Evidentiary

-17-

hearing is required and a new trial is warranted.

### (D) A NEW TRIAL IS REQUIRED WHERE THE PROSECUTOR HELD THE WITNESS BARBARA HOLBROOK UP IN FRONT OF THE JURY AND COURT AS UNASSAILABLE AND VOUCHED FOR HER CREDIBILITY WHILE KNOWING BARBARA HOLBROOK WAS GIVING INCOMPETENT INADMISSIBLE EVIDENCE

The prosecutor knowing that it's main witness was compromised by threats of criminal prosecution and inducement of early public housing by police withheld this information and vouched for it's case-in-chief witness credibility even though the prosecutor knew or should have known she was giving false testimony to the court and jury.

The prosecutor at trial pawned off the hearsay statements as statements made by the defendant, when in fact they were made by Vernon Campbell and the witness had told the police and Assistant District Attorney Vernon Campbell had told her. While the prosecutor carried out this charade the prosecutor argued to the trial Judge that it was important for the jury to know the mannerism of Mr. Scoggins that he joked about the cab driver. The prosecutor knew that the statements being attributed to the defendant by Barbara Holbrook was not made by the defendant and that the defendant had not joked about the cab driver. See Colloquy setout below:

> MS. Williams: A defendant's mannerism when he makes a statement is obviously relevant.
>
> The Court: I think you've entitled to find out what she observed, the defendant's appearance at the time he made the statement. But I think you have to be concluding, you know, summing up the whole business and saying he said it as a joke, or otherwise. I'm not sure how you get at it.
>
> Ms. Williams: You Honor, as you can see, she's a difficult witness.

-18-

    The Court: I understand she is.

    MS. Williams: I'm just trying to ask her in as fair a possible way. All I can do is ask her to tell me how she saw him, how he said it. I don't know how else I can ask in layman's English.

    MR. Elias: Why even ask her. Hasn't she done enough damage?

    The Court: Well, I think counsel is entitled to draw whatever evidence may properly be drawn from this witness, Mr. Elias.
                                            (Tr. III: 133)

I don't know how you achieve it, either, but I do think you have to avoid letting this lady conclude on the witness stand that this was all just a big joke with him, and he thought it was very funny.

    MS. Williams: Well, maybe the Court can - I mean I just want to ask her-

    The Court: I realize she's a difficult witness. She's obviously upset, crying or weeping, or coming close to it. And I realize that. But I think the defendant is entitled to have procedure followed.

    MS. Williams: All I can do is ask her to describe his mannerism as he said this.

    The Court: All right.
    (End of sidebar conference)

    BY MS. WILLIAMS:
Q. My last question is, can you tell me when Allen made these statements about not taking a cab, describe his mannerism?
                                            (Tr. III: 134)

    MR. Elias: Objection.

    The Court: Well, I'll allow that.

    BY MS. WILLIAMS:
Q. Describe his mannerism, please?

A. Jokingly.

    MS. WILLIAMS: Your Honor, may this witness sit, as she is pregnant?

    The Court: Do you feel uncomfortable, ma'am?

-19-

    MR. Elias: I didn't hear what she said.

    The Court: She asked if the witness could sit, Mr. Elias, because she's pregnant?

    Mr. Elias: Sure.

    The Court: I'm not sure you're not going to disappear with the arrangements here, though. The chair is awfully low.

    MS. Williams: I have no more questions. Thank you very much.

    The Court: Mr. Elias, you're up, please.

                              (Tr. III: 135)

In closing argument the prosecutor played out the deception:

"But furthermore isn't there a reasonable inference that a man who joked about taking cabs in the presence of Barbara Holbrook ... The evidence is inescapable that this defendant shot and killed this driver because he wanted money. That's exactly what the evidence suggests, and that's what the defendant said in Barbara Holbrooks presence." (Tr. IV: 53)

The prosecutor put this witness and her credibility before the jury as unassailable with no reason to lie or fabricate evidence against the defendant, even though the prosecutor knew the prosecution had threatened the witness with criminal charges as an accomplice or perjury then had enticed her with an inducement of early public housing to get her to point a finger at the defendant. The Prosecutor told the jury:

"But let's look to what we then found out, ladies and gentlemen. This murder happened in May, we now go to October; and we find the Defendant, and the police interview Barbara Holbrook. Barbara Holbrook came in this courtroom yesterday. Now, Barbara Holbrook told you several very important, basis facts. She told you, number one, that she had moved from Brockton, where she knew this family, where her boyfriend, the father of her child, is the defendant's mother's brother.

-20-

Vernon Campbell, the father of Barbara Holbrooks child is this man's uncle. Barbara Holbrook knows his whole family. Do you think she wanted to be here? You saw her crying, miserable. Draw from that a reasonable inference, which is would she have any reason to fabricate evidence against him? Why on earth would she come in here and tell you something that wasn't true?

Isn't it evident from her demeanor that what was so unspeakably painful was that she was obliged to come and tell what she knew, damaging though it was? She told you she moved to South Carolina in the spring a year-and-a-half ago, pregnant with vernon, this defendant's uncle. The baby was born down there. And some time later, late May they heard something about Allen and shortly thereafter who arrived in the Charleston area but Allen.

And she told you that she and Vernon saw him regularly, about every weekend, that they hung out and she told you about the day they played cards, playing specifically spades in Pam Price's apartment. Allen and his buddy were winning and Allen talked about the cab driver. And you will recall what he said -- and it is your memory that controls -- but didn't she say that Allen was going to stick up a cab driver? Stick up -- aren't those the exact words she used -- a cab driver, but the driver got scared and tried to call -- remember the picture of the microphone hanging out the door."

(Tr. IV: 41-43

"So what Barbara Holbrook did, ladies and gentlemen, was confirm what the Police investigation had shown by inference already. Barbara Holbrook told us something else, she said that at two different locations -- and your memory can control as to the specific addresses, apartments that she tolf you about -- This defendant talked about taking cabs. And the manner in which he talked about taking cabs was jokingly.

And then finally, ladies and gentlemen, as if we didn't know already who and why -- who did this crime and why -- we have the statement of the defendant."

(Tr. IV: 44)

"Allen Scoggins said, on his tape, to Trooper Coppenrath, 'I never talked about this in South Carolina. I kept it to myself. It wouldn't have done any good to talk about it.'

Coopenrath asked, 'Are you sure?'

-21-

'Yeah. Never talked about it.'

<u>Not true. How did Barbara Holbrook know</u>? "

(Tr. IV: 52)

"<u>But furthermore, isn't there a reasonable inference that a man who joked about taking cabs in the presence of Barbara Holbrook</u> is only sorry because he's caught?

Ladies and Gentlemen, you've seen the evidence. <u>The evidence is inescapable that this defendant shot and killed this driver because he wanted money</u>. That's exactly what the evidence suggests, <u>and that's what the defendant said in Barbara Holbrook's presence</u>."

(Tr. IV: 53)

The dishonesty of the prosecution is palpable. First, a witness must have personal knowledge of the matters he or she is testifying about. See <u>Commonwealth v. Whitehead</u>, 379 Mass. 640, 658, 400 N.E.2d 821, 834 (1980) and the Prosecution must not place evidence it knows to be hearsay or false before a jury as competent evidence. As in this case, the prosecution knew Barbara Holbrook was pressured into testifying to hearsay evidence and attributing those statements to the defendant. It was clearly done to obtain a wrongful conviction, just as vouching for her credibility and propping Barbara Holbrook up in the front of the jury as unassailable, even though the prosecutor knew the evidence/testimony Holbrook gave was hearsay and dubious at best.

The prosecutor's argument, the language and what it was meant to convey to the jury: "Do you think she wanted to be here? You saw her. Crying, miserable. Draw from that a reasonable inference, which is would she have any reason to fabricate evidence against him? Why on earth would she come in here and tell you something that wasn't true? Isn't

-22-

it evident from her deameanor that what was so unspeakably painful was that she was obliged to come and tell what she knew, damaging though it was?" (Tr. IV: 16-42) ..."And she told you about the day they played specifically spades in Pam Price's apartment. Allen and his buddy were winning and Allen talked about the cab driver...she said that Allen was going to stick up a cab driver? Stick-up aren't those the exact words she used -- a cab driver, but the driver got scared and tried to call..." (Tr. IV: 42-43)

This witness was so critical to the Prosecution's case because her testimony made up for the lack of evidence the Police had. As the prosecutor made clear in her closing, the police could infer things but they lacked evidence and Ms. Holbrook's testimony was the evidence that confirmed what the police could only infer. The Prosecutor argued: "So what Barbara Holbrook did, ladies and gentlemen, was confirm what the police investigation had shown by inference already." (Tr. IV: 44) "The evidence is inescapable that this defendant shot and killed this driver because he wanted money. That's exactly what the evidence suggests, and that's what the defendant said in Barbara Holbrooks presence." (Tr. IV: 53) "Allen Scoggins said, on his tape, to Trooper Coppenrath,' I never talked about this in South Carolina, I kept it to myself. it wouldn't have done any good to talk about it.' Coppenrath, 'are you sure?' 'Yeah. never talked about it.' 'Not True. How did Barbara Holbrook know?" (Tr. IV-52)

-23-

The Prosecution may not vouch for the credibility of it's witness or prop them in front of the jury as having unassailable credibilty when it has hidden the fact that the witness has a reason to lie, to be biased and a reason to tell the jury a story and attribute it to the defendant. A new trial is warranted.

> (E) THE DEFENDANT'S DUE PROCESS RIGHTS TO A FAIR TRIAL WERE VIOLATED WHEN THE PROSECUTION/POLICE INTIMIDATED THE MAIN CRITICAL WITNESS INTO TESTIFYING IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE TWELVE OF THE MASSACHUSETTS DECLARATION OF RIGHTS.

As previously stated within the other arguments, the Police threatened Ms. Barbara Holbrook with criminal charges of perjury or as an accomplice if she did not cooperate and incriminate the defendant The stick and carrot approach to have the witness testify against the defendant, attributing statements to the defendant which he never made requires reversal of the conviction and a new trial. It is axiomatic tha the prosecution may not intimidate a witness to testify in its favor. To do so violates due process of the Fourteenth Amendment to the United States Constitution.

In the present case the witness Barbara Holbrook swears under oath that the Prosecution (Police) told her they would charge her with perjury or as an accomplice if she did not testify against the defendant. (See Holbrook Affidavit paragraph 6).

In Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351 (1972) the court 'cautions that [S]ubstantial Government interference

-24-

with a witness free and unhampered choice to testify violates due process'. United States v. Goodwin, 625 F.2d 693, 703 (5th Cir. 1980); see also United States v. Blackman, 694 F.2d 1325, 1334 (D.C. Cir. 1982)('The constitutional right of a criminal defendant to call witness in his defense mandates that they be free to testify without fear of Government retaliation.)' See United States v. Jackson, 933 F.2d 832, 846-47 ( th Cir. 1991).

In United States v. Goodwin, 625 F.2d 693, 703 (1980) the court stated "threats against witnesses are intolerable substantial governmental interference with a defense witness free and unhampered choice to testify violates due process rights of the defendant. United States v. Henrichsen, 564 F.2d 197 (5th Cir. 1977). If such a due process violation occurs the court must reverse without regard to prejudice to the defendants. United States v. Hammond, 598 F.2d 1008 (5th Cir. 1975). The threats and intimidation is intolerable because it destroys the choice to testify freely. See e.g. United States v. Morrison, 535 F.2d 223 (3rd Cir. 1976); United States v. Thomas, 488 F.2d 344 (6th Cir. 1973)." United States v. MacCloskey, 682 F.3d 468 (4th Cir. 1982).

Here Ms. Holbrook avers in her sworn affidavit that she told the Police and the Assistant District Attorney that she had not heard the defendant make any statements about the case and that everything she knew about the case was told to her by Vernon Campbell, and that she only testified and repeated what Vernon Campbell told her, attributing

it to the defendant "because [she] was afraid [she] would go to jail if [she] did not." See Holbrook affidavit paragraph 11.

There is no question the threats and intimidation exerted duress on the witness to give false hearsay testimony at trial implicating the defendant and provide the only evidence of attempted robbery and felony murder as well as premeditated murder. In United States v. Smith, 478 F.2d 976, 979 (1973) the court quoted People v. Pena, 383 Mich. 402, 406, 175 N.W. 2d 767, 788 (1970) "[A] prosecutor may impeach a witness in court but he may not intimidate him in or out of court." See also Bray v. Peyton, 429 F.2d 500 (4th Cir. 1970).

This error has been deemed not to be harmless. See United States v. MacClosky, 682 F.3d 468 (4th Cir. 1982).

A New trial is required.

### IV. BARBARA HOLBROOKS AFFIDAVIT PRESENTS NEWLY DISCOVERED AND NEWLY AVAILABLE EVIDENCE.

Barbara Holbrooks Affidavit which was obtained Post Appeal comprises of Newly Discovered and Newly Available evidence requiring a New Trial pursuant to Mass. R. Crim. P. Rule 30(b). "Upon a motion for a new trial based on recantation by a material witness, the duty of the trial judge is to give grave consideration to the credibility of the witness's new testimony." Commonwealth v. Robertson, 357 Mass. 559, 562 (1970). The effect of Barbara Holbrook affidavit is that she was pressured and given an inducement to testify falsely, to attribute something incriminating

-26-

to the defendant which she had heard from another individual. To assign inculpatory statements to the defendant which the defendant never said or made. Here, the intimidation, pressure and inducement came from the police.

In Commonwealth v. Campiti, 41 Mass. App. Ct. 43, 62 (1996) the appeals court found: "There is no question that new evidence that investigating officers falsified warrant applications or lied in testimony is an appropriate ground for a new trial or, in egregious case of misconduct or deliberate misconduct involving a serious threat of prejudice, dismissal of charges."

Here the police action of threatening the witness with criminal perjury charges or to charge her as an accomplice when clearly she was not involved in the murder was egregious and prejudicial. It is well recognized that intimidation of a witness is not only improper but a criminal violation. G.L.c. 268, §13B provides in relevant parts:

> "Whoever, directly or indirectly willfully endeavors by means or gift, offer of promise of anything of value or by misrepresentation, intimidation, force or express or implied threats of force to influence, impede, obstruct, delay or otherwise interfere with any witness or juror in any stage of a trial, grand jury or other criminal proceeding...shall be punished..."

Further, "[I]ntimidation, according to the case is putting a person in fear for the purpose of influencing his or her conduct." Commonwealth v. McCreary, 45 Mass. App. Ct. 797, 799 (1998). Ms. Holbrook clearly states in her affidavit the police threatened her with criminal charges and she

-27-

feared she'd go to jail if she did not testify against the defendant.

Ms. Holbrook did not recant until after the trial and Appeal had been decided. The defendant could not have obtained her affidavit and information any earlier then he has. When defendant filed a previous Motion for New Trial and requested funds for an investigator the court denied the Motion and request even though the defendant set out articulate reasons for the motion and request. The evidence presented by Ms. Holbrook is Newly Discovered, Newly Available credible, material and casts real doubt on the justice of the conviction. See Commonwealth v. LaFaille, 439 Mass. 44, 55 (1999); Cf Commonwealth v. Cintron, 562 N.E.2d 108, 29 Mass. App. Ct. 983 (1991).

The Supreme Court of Massachusetts has stated: "[A] motion for new trial based on affidavits or testimony suggesting that a key prosecution witness may have lied at trial naturally merits serious consideration from the motion judge..." Commonwealth v. Watson, 377 Mass. 814, 838 (1979). Here there is evidence that Ms. Holbrook was under pressure and duress to do just that by the prosecution/Police.

There is no indication that Ms. Holbrook has or had anything to gain by recanting and she runs the risk of being charged with perjury by the same prosecution that forced and encouraged her to do so in order to obtain the conviction of the defendant. In fact there is evidence from the trial that Ms. Holbrook is now telling the truth. At one point

-28-

during the trial she testified denying hearing Mr. Scoggins making inculpatory statements and stated what she heard, she heard from Vernon Campbell. Under these circumstances Ms. holbrook's statements set-out in her affidavit are credible and have the indication of trustworthiness.

Ms. Holbrooks trial testimony was crucial for the prosecution obtaining the conviction. As a result, Ms. Holbrook's affidavit is material and would have been a real factor for the jury had they known of the threats and inducement. "It is enough that ... the absent evidence would have played an important role in the jury's deliberations and conclusions, even though it is not certain that the evidence would have produced a verdict of not guilty." Commonwealth v. Ramiraz, 46 Mass. App. Ct. 925, 927 (1999); quoting Commonwealth v. Tucceri, 412 Mass. at 414 (1992).

Ms. Holbrook's statements set-out in her affidavit would have been a real factor in the jury's deliberation as they remove the only direct evidence offered by the prosecution that the defendant attempted to rob the victim, the only evidence of felony murder. Her statements further diminish the credibility of other Prosecution police witnesses and would be a factor in whether the jury found the defendant quilty of manslaughter or murder. Ms. Holbrook's testimony at trial was the only evidence offered that the shooting was not accidential.

In this light, Ms. Holbrook's affidavit removes evidence which was crucial to the defendant's conviction. According,

-29-

the affidavit presents evidence that is material and would have been a real factor for the jury and is Newly Discovered and Newly Available Evidence.

### V.   CONCLUSION

For all the reasons stated above, this court should grant the defendant an evidentiary hearing, and after hearing all the evidence grant the defendant a new trial.

Respectfully submitted,

*/s/ Allen Alston*

Dated: December 1, 2007

Allen Alston, Pro se
W-65758
Old Colony Corr. Center
1 Administration Road
Bridgewater, Ma. 02324

### CERTIFICATE OF SERVICE

I hereby certify that on this day I served a copy of this memorandum, along with Motion to Amend Motion For New Trial, by first class mail, postage pre-paid, upon Robert C. Thompson, District Attorney's Office, 32 Belmont Street, Brockton, Ma. 02301.

*/s/ Allen Alston*          12-03-07
Allen Alston               Date