UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALLEN SCOGGINS,
    Petitioner


    v.                                          CIVIL ACTION NO.
                                                04-10814-PBS

TIMOTHY HALL,
    Respondent.


**REPORT AND RECOMMENDATION RE:
MOTION TO DISMISS (DOCKET ENTRY # 58)**

**MEMORANDUM AND ORDER RE:
PETITIONER'S MOTION FOR AN EVIDENTIARY HEARING
(DOCKET ENTRY # 61) MOTION TO AMEND PETITIONER'S
MEMORANDUM OF LAW IN SUPPORT OF HABEAS CORPUS
(DOCKET ENTRY # 56); PETITIONER'S MOTION FOR
LEAVE TO AMEND PETITION FOR HABEAS CORPUS PURSUANT
TO FEDERAL RULES OF CIVIL PROCEDURE RULE 15(A)
(DOCKET ENTRY # 64); PETITIONER'S PROPOSED AMENDMENT
TO 28 U.S.C. § 2254 PETITION FOR HABEAS CORPUS PURSUANT
TO FEDERAL RULES OF CIVIL PROCEDURE RULE 15(A)
(DOCKET ENTRY # 67)**

**June 1, 2011**


**BOWLER, U.S.M.J.**

    In April 2004, petitioner Allen Scoggins ("petitioner"), an
inmate at the Old Colony Correctional Center ("Old Colony") in
Bridgewater, Massachusetts, filed the above styled petition for a
writ of habeas corpus under 28 U.S.C. § 2254(d) ("section 2254").
The petition challenges his 1998 conviction of first degree
murder rendered under theories of deliberate premeditation and
felony murder in the Massachusetts Superior Court Department

(Plymouth County) ("the trial court").

Respondent Timothy Hall ("respondent"), Superintendent of Old Colony, moves to dismiss the petition because various claims are: (1) contrary to or an unreasonable application of clearly established law as determined by the Supreme Court under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d); (2) procedurally defaulted; (3) not exhausted; and/or (4) not in compliance with Rule 2, 28 U.S.C. foll. § 2254. (Docket Entry # 59). Respondent also maintains that various claims in a recently filed motion to amend do not relate back to the original petition, see Rule 15(c), Fed. R. Civ. P.; Rule 12, 28 U.S.C. foll. § 2254, and are therefore untimely, see 28 U.S.C. § 2244(d)(1). (Docket Entry # 70)

## GROUNDS FOR RELIEF

The original petition attacks the conviction because: (1) it was obtained by use of a coerced confession (ground one); (2) it was obtained by a violation of the privilege against self incrimination (ground two); and (3) petitioner received ineffective assistance of trial counsel. (Docket Entry # 2). The ineffective assistance of trial counsel claim subdivides into complaints that trial counsel: (a) did not seek to suppress petitioner's confession because petitioner was not allowed to make a telephone call to a family member, friend or attorney as

2

required under Massachusetts law (ground 3(a)); and (b) did not fully investigate or interview witnesses for the defense, to wit, Barbara Holbrook ("Holbrook"), Vernon Campbell ("Campbell"), Pam Price ("Price") and Jermaine Campbell, and did not call Campbell, Price and Jermaine Campbell to testify (ground 3(b)). (Docket Entry # 2).

Beginning in December 2004, petitioner obtained a series of stays in this action to obtain counsel in order to file a motion for a new trial in state court. In November 2007, the Committee for Public Counsel Services ("CPCS") appointed counsel who shortly thereafter filed a new trial motion in the trial court ("second new trial motion").[1] (Docket Entry # 29).

Represented by counsel, petitioner sought a new trial because of an alleged erroneous admission of highly prejudicial hearsay testimony by Holbrook and ineffective assistance of trial counsel because he failed to fully investigate the case by interviewing Holbrook prior to trial. At the December 1998 trial, Holbrook testified about what petitioner said to Campbell, Holbrook's former boyfriend, as opposed to what petitioner said to Holbrook, according to Holbrook's 2007 affidavit.[2] Holbrook's

---

[1] As explained infra, this was petitioner's second new trial motion.

[2] On cross examination, trial counsel questioned Holbrook extensively about whether she was testifying about what someone else told her about what petitioner said. At various times, she confirmed that petitioner made certain statements to her and

affidavit supporting the new trial motion also reveals that
Massachusetts police assisted her in obtaining public housing
within three months even though the process normally takes more
than a year. The affidavit also notes that Holbrook testified at
trial because she "was afraid [she] would go to jail" because
Massachusetts police told her she "would be charged with perjury
or as an accomplice if [she] did not testify against
[petitioner]."[3] (Docket Entry # 30).

In September 2009, a Justice of the trial court ("the second
Justice") denied the second new trial motion on the basis that
the issues were known or knowable to appellate counsel[4] and
therefore waived. The second Justice also denied various claims
in the pro se motion to amend the second new trial motion noting
that petitioner waived the five grounds of prosecutorial
misconduct raised therein. In May 2010, a single Justice of the
Massachusetts Supreme Judicial Court ("SJC") denied petitioner

---

distinguished statements that petitioner made to Campbell. Trial
counsel also downplayed Holbrook's testimony during closing
argument on the basis that she testified about what petitioner
said to Campbell as opposed to what petitioner said to her.

[3] One of the five prosecutorial claims in a pro se motion
to amend the second new trial motion asserts that the prosecution
withheld this exculpatory evidence and that the failure to
disclose it denied petitioner a fair trial and due process in
violation of the Fourteenth Amendment. (Docket Entry # 60, Ex.
L, A. 33-34).

[4] Petitioner's trial counsel did not represent him on
direct appeal.

leave to file an appeal to the full court.  <u>See</u> Mass. Gen. L. ch. 278, § 33E.

On September 16, 2010, petitioner filed a memorandum in this action raising additional grounds for relief as well as additional arguments to support grounds one, 3(a) and 3(b) in the original petition.[5]  (Docket Entry # 54).  The new and additional grounds raised in the memorandum are:  (1) a denial of a fair trial and due process based on prosecutorial misconduct (ground four) (Docket Entry # 54, pp. 15-41);[6] (2) insufficient evidence to convict petitioner of first degree murder based on the theory of felony murder and deliberate premeditation (ground five) (Docket Entry # 54, pp. 42-48); and (3) ineffective assistance of trial counsel based on trial counsel's failure to file a pretrial

_____

[5]  The claim in the memorandum that respondent designates as claim four alleges the trial court erred in denying a motion to suppress the statements resulting from the coerced confession in contravention of petitioner's <u>Miranda</u> rights and as not voluntarily made.  (Docket Entry # 54, pp. 6-14).  This "claim" is simply additional support for ground one in the original petition.  Respondent also notes the identical nature of the claim.  (Docket Entry # 59, p. 24).

The memorandum also includes additional support for the ineffective assistance of trial counsel claim in ground 3(a).  (Docket Entry # 54, pp. 59-63).  Further, it includes extensive and additional support for ground 3(b).  (Docket Entry # 54, pp. 49-58 & 66-69).

[6]  Ground four (Docket Entry # 54, pp. 15-41) includes the same prosecutorial misconduct raised in a supplemental brief filed on direct appeal and on appeal of an October 2002 denial of a pro se new trial motion ("first new trial motion") (Docket Entry # 8, Ex. E, pp. 38-50) and in the pro se motion to amend the second new trial motion (Docket Entry # 60, Ex. L, A. 33-34 & 42-61).

motion seeking exculpatory evidence and the existence of any offer of leniency, inducements or rewards which would have uncovered the public housing assistance provided to Holbrook (ground six) (Docket Entry # 54, pp. 64-65).

One month later on October 20, 2010, petitioner filed a motion to amend the petition ("the first motion to amend") to include the claim in the second new trial motion that the erroneous admission of highly prejudicial hearsay testimony by Holbrook violated petitioner's right of confrontation (ground seven).[7] (Docket Entry # 56). The first motion to amend also submits that the information in Holbrook's affidavit that she did not have first hand knowledge of what petitioner said constituted new and material evidence and that Holbrook testified to having such first hand knowledge "because of police pressure and inducement" (ground eight). (Docket Entry ## 56 & 57).

On December 29, 2010, petitioner filed another motion to amend ("the second motion to amend"). (Docket Entry # 64). This motion seeks leave to amend the original petition to include the claims raised in the September 2010 supplemental memorandum (Docket Entry # 54), the first motion to amend (Docket Entry # 56) and the supporting memorandum to the first motion to amend (Docket Entry # 57).

---

[7] The proposed amendment mirrors the arguments CPCS counsel made in the second new trial motion. (Docket Entry # 29).

On February 7, 2011, petitioner filed a third motion to amend. (Docket Entry # 67). In addition to including grounds one, two, 3(a) and 3(b) (Docket Entry # 67, ¶¶ 12A, 12B, 12C(1) & 12C(2)), the proposed amendment seeks to amend the petition to include ground six (Docket Entry # 67, ¶ 12C(3)), ground four (Docket Entry # 67, ¶¶ 12D(1)-(7)), ground seven (Docket Entry # 67, ¶ 12E), ground eight (Docket Entry # 67, ¶ 12F) and ground five (Docket Entry # 67, ¶ 12G). (Docket Entry ## 67 & 68). Respondent submits that: (1) ground six is waived and procedurally defaulted; (2) grounds four, five, seven and eight are untimely; and (3) grounds five, seven and eight violate Rule 2, 28 U.S.C. foll. § 2254. (Docket Entry # 70).

PROCEDURAL BACKGROUND

On June 9, 1997, a grand jury sitting in the trial court indicted petitioner for first degree murder of a taxicab driver in Brockton, Massachusetts. In December 1997, trial counsel filed a motion to suppress the confession consisting of damaging, tape recorded statements petitioner made to Massachusetts State Trooper Leonard Coppenrath ("Trooper Coppenrath") and Brockton Detective Mark Reardon ("Detective Reardon") during an interview conducted in South Carolina. Petitioner filed a supplemental motion to suppress in January 1998. In August 1998, a Justice of the trial court who was not the trial judge ("the suppression

court") held a two day evidentiary hearing which included the
audiotape recording and a transcript of the interview.  The
suppression court denied the motion in a thoughtful opinion that
found the confession was voluntary and that petitioner did not
make an affirmative request for an attorney.[8]

On December 17, 1998, a jury found petitioner guilty of
first degree murder on theories of deliberate premeditation and
felony murder with the underlying felony being attempted armed
robbery.  The trial court sentenced petitioner to life
imprisonment.

Represented by a different attorney, petitioner appealed the
conviction to the SJC.  Appellate counsel argued that the
suppression court erred in denying the motion to suppress the
statements because the confession was coerced, not voluntary and
petitioner did not waive his <u>Miranda</u> rights.[9]  Petitioner filed a
pro se supplemental brief based on ineffective assistance of
trial counsel because he did seek suppression based on the
failure to provide petitioner a telephone call to family or
friends as required under section 33A of Massachusetts General

---

[8]  The findings, summarized by the SJC, are reproduced
below.

[9]  The arguments correspond to those made by petitioner in
ground one.  (Docket Entry # 2, ¶ 12A; Docket Entry # 54, pp. 6-
14).

Laws chapter 276 ("chapter 276").[10]

During the pendency of the appeal, petitioner filed the first new trial motion. The pro se motion included claims of prosecutorial misconduct, insufficient evidence and ineffective assistance of trial counsel.[11] (Docket Entry # 8, Ex. F, pp. 13-30). In October 2002, with the trial judge having retired, a different Justice of the trial court ("the first Justice") denied the first new trial motion without a hearing.

In 2003, petitioner filed the pro se supplemental brief appealing the conviction and the denial of the first new trial motion to the SJC. The pro se submission includes claims of trial counsel's ineffectiveness for: (1) not arguing suppression based on the failure to provide a telephone call under chapter 276;[12] and (2) not interviewing and investigating Holbrook, Campbell, Price and Jermaine Campbell and not calling Campbell, Price and Jermaine Campbell to testify at trial.[13] The pro se submission additionally includes claims of: (1) insufficient evidence to convict petitioner of first degree murder based on

---

[10] The argument corresponds to ground 3(a) of the present petition.

[11] The motion also included the <u>Miranda</u> claims. (Docket Entry # 8, Ex. F, p. 26).

[12] The argument corresponds to ground 3(a) of the present petition.

[13] This argument corresponds to ground 3(b) of the present petition.

either theory of felony murder or deliberate premeditation;[14] and (2) prosecutorial misconduct.  (Docket Entry # 8, Ex. E).

The SJC considered the appeal of the denial of the first new trial motion along with the direct appeal.  On June 18, 2003, the court conducted a review of the entire record under section 33E of Massachusetts General Laws chapter 278 ("section 33E"), considered and rejected the arguments raised by appellate counsel and in the pro se supplemental brief and affirmed the denial of the first new trial motion and the conviction.  Commonwealth v. Scoggins, 789 N.E.2d 1080 (Mass. 2003).

Petitioner filed this petition in April 2004.  Having secured a number of stays, he returned to state court and filed the second new trial motion, the pro se motion to amend the second new trial motion and a number of affidavits, including the Holbrook affidavit.  In May 2010, the single Justice of the SJC denied leave to appeal the second Justice's denial of the second new trial motion and the pro se motion to amend.  Thereafter, petitioner filed the additional memorandum in September 2010 in this action and the motion to amend in October 2010.


## HISTORICAL FACTS

The historical, basic or primary facts determined by a state

---

[14]  This argument corresponds to ground five of the present petition.

court are presumed correct although a petitioner may rebut the
presumption by clear and convincing evidence.  28 U.S.C. §
2254(e)(1); <u>Coombs v. State of Maine</u>, 202 F.3d 14, 18 (1st Cir.
2000) (presumption applies to "'basic, primary, or historical
facts'" with respect to external events including "the
credibility of their narrators"); <u>accord</u> <u>Sleeper v. Spencer</u>, 510
F.3d 32, 38 (1st Cir. 2007) ("the term 'facts'" in section
2254(e)(1) "refers to 'basic, primary, or historical facts,' such
as witness credibility and recitals of external events").  The
presumption extends to the facts found by the suppression court
and the SJC.  <u>See</u> <u>Teti v. Bender</u>, 507 F.3d 50, 58-59 (1st Cir.
2007) ("'presumption of correctness is equally applicable when a
state appellate court, as opposed to a state trial court, makes
the finding of fact'").  The historical facts found by the SJC
are as follows:

> Just after 1:20 A.M. on May 16, 1997, as a result of gunshot
> wounds, the victim collapsed not far from the taxicab he had
> been driving.  He was pronounced dead minutes later.  His
> taxicab had rolled onto a lawn, where it stopped, its lights
> on and its engine still running.  Circumstantial evidence
> tied the [petitioner] to the crime.  A man had telephoned
> the taxicab company asking to be driven from Wyman Street to
> West Elm Street in Brockton, and the victim was dispatched
> to this call at 1:09 A.M.  The [petitioner] was seen
> entering the taxi at the Wyman Street location at around
> 1:15 A.M., and evidence indicated that the [petitioner] was
> the victim's last fare.  In addition, the jury heard
> testimony that shortly after the shooting, the [petitioner]
> appeared in South Carolina, where he boasted about
> committing a murder.  He said he had telephoned for a
> taxicab and that he had intended to "stick up" the driver.
> The driver, however, "got scared," "tried to call," and "was

going to jump out of the car," so the [petitioner] shot him. As a result, the [petitioner] joked, he could no longer take taxicabs. The [petitioner] was arrested in South Carolina on October 7, 1997.

The [petitioner] was interrogated by the Massachusetts authorities in South Carolina the day after his arrest and made a number of incriminating statements. He confessed that he was the victim's last fare and that he carried with him a loaded gun. He also admitted that he pulled out the gun after the victim made a wrong turn and that the victim was shot with the gun the [petitioner] carried. However, the [petitioner] claimed that he could not recall precisely what had happened, just that "[t]he gun was going off" and that he was drunk or "high" on drugs (marijuana containing cocaine). The [petitioner] denied that he attempted to rob the victim and claimed self-defense. The [petitioner] also said that he was sorry for taking someone's life.

Commonwealth v. Scoggins, 789 N.E.2d at 1082 & n.1.

At this point in the opinion, the SJC summarizes the facts found by the suppression court. Credibility determinations of witnesses made by a suppression court as interpreted by the state's highest court receive a presumption of correctness. Coombs v. State of Maine, 202 F.3d at 19 ("[t]o accept Coombs's position, however, we would have to reject the Maine Law Court's interpretation of precisely what action was taken by the suppression court, a court under its jurisdiction"). The SJC's summary reads as follows:

The [petitioner] was indicted for murder on June 9, 1997, but the police were unable to locate him. In August, 1997, the police learned that the [petitioner] had fled to South Carolina. Considerable publicity was focused on the North Charleston area, but the authorities were not successful in locating the [petitioner] at that time. Subsequently, police in South Carolina received information that the [petitioner] was staying at a specific address and arrested him at about 10 A.M. on October 7. The [petitioner] was

brought to the local police station where he was read his
Miranda rights and indicated that he understood them.  At
the time, he was nineteen years of age and had prior
experience with the juvenile justice system at sixteen years
of age.  During the course of the morning, South Carolina
police also presented the [petitioner] with a "Waiver of
Extradition" form and a "Prompt Arraignment Notification and
Waiver" form (the latter had been sent by facsimile
transmission from Massachusetts).  The [petitioner] signed
both.  Throughout this process, the [petitioner] appeared
calm and "nonchalant."

Massachusetts State Trooper Leonard Coppenrath and Brockton
Detective Mark Reardon traveled to South Carolina that
evening.  They arrived at the police station sometime after
11 A.M. the next morning, October 8, 1997, and introduced
themselves to the [petitioner].  Noticing that the
[petitioner] was shivering, they moved him to a warmer room,
and Trooper Coppenrath gave the [petitioner] his suit jacket
so that the [petitioner] would be comfortable.  The officers
asked the [petitioner] if he would like any food or drink
and provided him with water at his request.  The
[petitioner] was not in handcuffs or otherwise restrained.
The officers were in plain clothes.  They informed the
[petitioner] he was under arrest for the murder of a
Brockton taxicab driver and for intimidation of a witness
(the latter charge arose from a different case involving the
[petitioner]'s brother).  The [petitioner] said that he knew
about the murder charge, but not about the intimidation
charge.  He said that he had a tenth grade education and
could read and write, that he had no mental illness, and
that he could understand English.  There was no indication
that the [petitioner] was under the influence of drugs or
alcohol.  (By the time of the interview, he had been in
custody for over twenty-four hours.)

The [petitioner] was again informed of his Miranda rights
and indicated that he understood those rights.  *He asked
Trooper Coppenrath if he should have an attorney present,
and the trooper explained that this was the [petitioner]'s
decision to make.  The interrogation proceeded, and the
[petitioner] did not request an attorney.*[15]  The

_____

[15]  The corresponding portion of the factual findings by the
suppression court states that:

Trooper Coppenrath then read the [petitioner] his Miranda

13

[petitioner] was given the option of having his statements
reduced to writing or proceeding with a tape-recorded
interview.  [Petitioner] was again informed of his Miranda
rights and indicated that he understood those rights.  He
asked Trooper Coppenrath if he should have an attorney
present, and the trooper explained that this was the
[petitioner]'s decision to make.  The interrogation
proceeded, and the [petitioner] did not request an attorney.
The [petitioner] was given the option of having his
statements reduced to writing or proceeding with a
tape-recorded interview.  He chose the latter option, and
the interrogation, which lasted about one and one-half
hours, was recorded.  When the recording began, the trooper
again reviewed the Miranda waiver form with the [petitioner]
and had the [petitioner] sign the form while the tape was
recording.  The interrogation began with questions about the
witness intimidation charge (the [petitioner] denied this
charge) and proceeded to the murder charge.

Based on the evidence before him, the motion judge found
that the [petitioner] clearly understood the purpose of the
interview; that the police did not coerce or intimidate the
[petitioner]; and that the [petitioner] was not mistreated
in any way.  Thus, the judge concluded that the [petitioner]
knowingly, intelligently, and voluntarily waived his Miranda
rights and that his statements were voluntary.

Commonwealth v. Scoggins, 789 N.E.2d at 1082-1083 (emphasis

added).


<u>                                              DISCUSSION</u>


I.   <u>AEDPA STANDARD OF REVIEW</u>

_____

rights from a form which he showed to the [petitioner].
Next to each paragraph on the form, the [petitioner] noted
that he understood his rights.  Before waiving his right to
remain silent, the [petitioner] asked Trooper Coppenrath
whether he should have an attorney present.  Trooper
Coppenrath told him that it was a decision the [petitioner]
would have to make.  The [petitioner] then decided to speak
to the police without an attorney.

(Docket Entry # 8, Ex. A, p. 14).

The AEDPA governs these proceedings because petitioner filed this petition after April 24, 1996. Section 2254(d) establishes "two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 404 (2000). Under the first category, "a state court determination is 'contrary to' clearly established law if the court 'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" Gomes v. Brady, 564 F.3d 532, 537 (1st Cir. 2009); accord Ramdass v. Angelone, 530 U.S. 156, 165-166 (2000) (decision is contrary to "clearly established federal law if it applies a legal rule that contradicts" the "prior holdings" of the Supreme Court or "reaches a different result from" a Supreme Court case "despite confronting indistinguishable facts"); Williams v. Taylor, 529 U.S. at 405-406 (same).

Under the second category, the federal court may grant the writ if the relevant state court decision "'involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. at 404-405 (quoting statute with ellipses omitted). An unreasonable application of clearly established

15

federal law occurs if the state court "'correctly identifies the governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply.'"  Gomes v. Brady, 564 F.3d at 537; see Foxworth v. St. Amand, 570 F.3d 414, 425 (1st Cir. 2009).

"'[C]learly established Federal law'" refers to "'the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision.'" Yeboah-Sefah v. Ficco, 556 F.3d 53, 65 (1st Cir.) (brackets omitted), cert. denied, 130 S.Ct. 639 (2009).  The inquiry is an objective one, see McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002), insofar as the decision "must have been 'objectively unreasonable.'"  Wiggins v. Smith, 539 U.S. 510, 520 (2003).

An objectively unreasonable application of the relevant jurisprudence differs from an incorrect or erroneous application of such jurisprudence.  Williams v. Taylor, 529 U.S. at 365; accord Wiggins v. Smith, 539 U.S. at 520-521 ("state court's decision must have been more than incorrect or erroneous").  Under the unreasonable application prong, the "habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision

16

applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 365; accord Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable--a substantially higher threshold"). When "it is the state court's application of governing federal law that is challenged, the decision 'must be shown to be not only erroneous, but objectively unreasonable.'" Waddington v. Sarausad, 129 S.Ct. 823, 831 (2009); accord Foxworth v. St. Amand, 570 F.3d at 425 ("state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error").

Section 2254(d) also "applies even where there has been a summary denial" such as where the state court denies a motion based on a "substantive ground that it is without merit." Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011) (the state court denied each state petitions "'on the substantive ground that it is without merit'").[16] With these principles in mind, this court turns to the grounds for habeas relief.

---

[16] For example, in the case at bar, the second Justice denied the prosecutorial misconduct claims raised in the pro se motion to amend the second new trial motion as "unfounded" and the SJC denied the pro se ineffective assistance of counsel claims as "without merit." Commonwealth v. Scoggins, 789 N.E.2d at 1086 n.6.

I.  Ground One

    Ground one (Docket Entry # 2, ¶ 12A) as elucidated in the
memorandum (Docket Entry # 54, pp. 6-14) alleges that the
Commonwealth failed to establish that petitioner voluntarily
waived his Miranda rights or that the statements he made after
the waiver were voluntary and not coerced.  The suppression court
rejected both arguments on the merits and the SJC affirmed the
decision on the merits.

    Addressing the first allegation, the suppression court and
the SJC assessed the voluntary nature of the Miranda waiver under
the totality of the circumstances.  Commonwealth v. Scoggins, 789
N.E.2d at 1083-4; (Docket Entry # 60, Ex. J).  Supreme Court law
allows a defendant to waive his Miranda rights if that waiver is
knowing, intelligent and voluntary.  Miranda v. Arizona, 384 U.S.
436, 444 (1966); United States v. Palmer, 203 F.3d 55, 60 (1st
Cir. 2000).  The voluntariness of a waiver is determined by the
totality of the circumstances surrounding the defendant's
statements to the police.  See Arizona v. Fulminante, 499 U.S.
279, 285 (1991); Withrow v. Williams, 507 U.S. 680, 693-694
(1993); United States v. Palmer, 203 F.3d at 60.  Examining the
voluntariness of a waiver under the totality of the circumstances
includes examining "'the tactics used by the police, the details

18

of the interrogation, and any characteristics of the accused that might cause his will easily to be overborne.'" <u>United States v. Palmer</u>, 203 F.3d at 60.  Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." <u>Moran v. Burbine</u>, 475 U.S. 412, 422-423 (1986) (Fifth Amendment does not require police to inform a defendant of attorney's efforts to contact him).

Because the suppression court and the SJC applied the correct totality of the circumstances standard, the issue reduces to an assessment of the reasonableness of the decision(s).  The validity of the <u>Miranda</u> waiver and, hence, the reasonableness of the suppression court's and the SJC's decisions, is without doubt.  Police repeatedly gave petitioner <u>Miranda</u> warnings before each interview.  Petitioner was 19 years old at the time of the October 8, 1997 interview.  By this time, petitioner had been in custody for slightly more than 24 hours and there was no indication he was under the influence of alcohol or drugs.  He had a tenth grade education and stated he could read and write. Petitioner was not in shackles or handcuffs.  Because he was

shivering, Trooper Coppenrath gave him his jacket and asked him if he would like any food or water. Petitioner indicated he was not hungry but would like some water which was provided.

Before the taping, Trooper Coppenrath read petitioner his Miranda rights. Petitioner indicated that he understood his rights and noted his understanding next to each paragraph including the paragraph that he had a right to talk to an attorney and have an attorney while being questioned. Petitioner asked Trooper Coppenrath if he should have an attorney present. Trooper Coppenrath unequivocally explained to petitioner that it was his decision to make and the interrogation proceeded. Petitioner thereafter chose a taped proceeding in lieu of written statements. At the outset of the taping, Trooper Coppenrath again reviewed the Miranda waiver form and petitioner signed the form during the taping.[17] The tactics employed by the police were even keeled and did not threaten or force petitioner to waive his Miranda rights.

Petitioner's question to Trooper Coppenrath about whether petitioner should have an attorney did not unambiguously invoke

---

[17] The suppression court listened to the tape recording and read the transcript of the interview before rendering its decision.

petitioner's right to counsel.  See Davis v. United States, 512

U.S. 452, 459-460 (1994).  Clearly established Supreme Court

precedent requires a suspect to request an attorney

unambiguously.  Id. at 459 ("the suspect must unambiguously

request counsel"); see Bui v. DiPaolo, 170 F.3d 232, 239-240 (1st

Cir. 1999).  Equivocal or ambiguous statements are not enough to

invoke the right to have an attorney.  Davis v. United States,

512 U.S. at 459-460 (declining the "petitioner's invitation to

extend Edwards and require law enforcement officers to cease

questioning immediately upon the making of an ambiguous or

equivocal reference to an attorney").[18]

The suppression court rejected the argument on the basis

that petitioner did not make "an affirmative request for an

attorney."  (Docket Entry # 60, Ex. J, p. 17).  The SJC similarly

explained that "a mere inquiry regarding the need for an attorney

does not require the police to cease an interrogation."

Commonwealth v. Scoggins, 789 N.E.2d at 1083.  Petitioner's query

to Trooper Coppenrath is at best an equivocal or ambiguous

indication that petitioner wanted counsel present.  As such, the

_____

[18]  The Supreme Court recently reaffirmed the Davis rule
which requires an unambiguous assertion of the right to counsel.
See Berghuis v. Thompkins, 130 S.Ct. 2250, 2259 (2010).

21

suppression judge's and SJC's decisions to reject the claim were not objectively unreasonable.

In sum, the suppression court and the SJC applied the correct clearly established federal law as determined by the Supreme Court and the application of that law was not objectively unreasonable.

Turning to the voluntariness of the statements, clearly established Supreme Court precedent examines the constitutionality of post arrest statements under "'the totality of the circumstances.'" Blackburn v. Alabama, 361 U.S. 199, 206 (1960). The inquiry focuses on the coercive nature of the statements given to the police. As held by the Supreme Court in 1986 with respect to the voluntariness of confessions, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Colorado v. Connelly, 479 U.S. 157, 167 (1986). "A defendant's mental condition by itself and apart from its relation to official coercion never disposes of the inquiry into the constitutional voluntariness." United States v. Palmer, 203 F.3d at 61-62 (citing Colorado v. Connelly, 479 U.S. at 164).

Because the suppression court and the SJC applied the

correct totality of the circumstances standard, the issue again
devolves into assessing the reasonableness of the decisions.  The
record establishes an absence of police coercion.  Neither
Trooper Coppenrath nor Detective Reardon threatened petitioner
with consequences for failing to speak.  Petitioner's reliance on
Trooper Coppenrath's statement that he "was going to help you"
overlooks that four lines later Trooper Coppenrath states,
"That's not my decision" to which petitioner replies, "Yeah, it's
the judge's decision."  (Docket Entry # 60, Ex. J).  Shortly
after this exchange, Detective Reardon confirms that "it's going
to be the court's decision and the judge's verdict . . .."
(Docket Entry # 60, Ex. J).

     In addition, the police did not take advantage of
petitioner's low intelligence or cognitive difficulties.  See
Blackburn v. Alabama, 361 U.S. at 207 (noting strong conviction
that law enforcement should not take advantage of individual who
was likely insane and incompetent at the time he confessed).
Trooper Coppenrath explained he "was not putting words in
[petitioner's] mouth" and he did not give petitioner any false
information or false evidence.  Petitioner responded
affirmatively when asked if he was comfortable and had been
treated like a gentleman and not "abused in any way."  (Docket

Entry # 60, Ex. J). Petitioner expressly waived his right to a prompt arraignment within 24 hours of his arrest and agreed that police could question him before he appeared before a judge. Finally, the alleged denial of the ability to make a telephone call to friends or family (Docket Entry # 2, ¶ 12A, Att. p. 2) does not dispel the absence of coercion or the absence of unconstitutional police tactics.

Given the absence of police overreaching and coercion and considering petitioner's mental and physical state, the decisions upholding the confession and the statements as voluntary were not objectively unreasonable applications of clearly established law as determined by the Supreme Court. See Colorado v. Connelly, 479 U.S. at 164 n.1 (collecting cases involving far more serious overreaching where the defendant's mental condition along with improper police tactics made confessions involuntary). Indeed, the suppression court's and the SJC's decisions were correct.

II.  Ground Two

Respondent accurately notes that ground two is not exhausted. It is true that petitioner presented the underlying facts to the SJC on direct appeal in conjunction with the legal claim that he did not voluntarily waive his Miranda rights or voluntarily make the inculpatory statements. Petitioner did not,

however, present the distinct legal claim of a conviction obtained in violation of the privilege against self incrimination.

Exhaustion, a matter of comity, requires the petitioner to present the substance of his federal "claim 'fairly and recognizably' to the state courts." Janosky v. St. Amand, 594 F.3d 39, 50 (1st Cir. 2010) (quoting Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997)); see Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988) (exhaustion requires the petitioner to fairly present "'the substance of his federal habeas claim to the state court before seeking federal review'"). In order to fairly present a claim, the petitioner "must have tendered the claim 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" Janosky v. St. Amand, 594 F.3d at 50; accord Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008) ("the petitioner must show that he tendered his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question") (internal quotation marks omitted).

Exhaustion requires the petitioner to "inform the state court of both the factual and legal underpinnings of the claim." Scarpa v. DuBois, 38 F.3d 1, 6 (1st Cir. 1994). Fair

presentment, however, does not mean "that the pleadings in the state and federal courts must be identical." Dutil v. Murphy, 550 F.3d at 158. "'[T]he legal theory articulated in the state and federal courts [however] must be the same." Id.

A petitioner satisfies the "fair presentment requirement if he does any of" the following: "(i) cites a provision of the federal Constitution upon which the relevant claim rests; (ii) advances the claim in a manner that alerts the state court to its federal nature; (iii) cites federal constitutional precedents in support of the claim; or (iv) explicitly alleges a violation of a right specifically protected in the federal Constitution. Janosky v. St. Amand, 594 F.3d at 50. With exceptions not relevant to the case at bar, the petitioner must present the federal claim to the state's highest court, i.e., the SJC. See Janosky v. St. Amand, 594 F.3d at 50; Adelson v. DiPaola, 131 F.3d at 263; Mele v. Fitchburg District Court, 850 F.2d 817, 820 (1st Cir. 1988).

Here, petitioner presented the facts to the SJC in the context of a different legal claim. Petitioner's presentiment was bereft of an accompanying legal theory of a violation of the privilege of self incrimination. He therefore fails to satisfy his burden that he exhausted his state court remedies.

Nevertheless, state court remedies must be "available" within the meaning of section 2254(b)(1)(A).  See Evicci v. Commissioner of Corrections, 226 F.3d 26, 27 (1ˢᵗ Cir. 2000). The exhaustion doctrine codified in the AEDPA reflects the futility exception and allows consideration of the petition where:  "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(B).

The First Circuit in Evicci found that the petitioner lacked "available" state court remedies because, citing Commonwealth v. Gagliardi, 638 N.E.2d 20 (Mass. 1994), Massachusetts courts "deem grounds not raised on the direct appeal to have been waived." Evicci v. Commissioner of Corrections, 226 F.3d at 27.  As noted by the SJC in Gagliardi, "The rule of waiver 'applies equally to constitutional claims which could have been raised, but were not raised on direct appeal or in a prior motion for new trial.'" Commonwealth v. Gagliardi, 638 N.E.2d at 22 (citation and internal quotation marks omitted).  Here, knowing the facts, petitioner could easily have included a violation of the privilege against self incrimination on direct appeal to the SJC. In light of the waiver doctrine, it is highly unlikely that

27

Massachusetts courts would reach the merits of the issues raised
in ground two on a third motion for a new trial.

Where, as here, state court remedies with respect to ground
two are no longer available and, as a result, the petitioner is
deemed to have exhausted state court remedies, he is nevertheless
barred from raising the federal claims "in a federal habeas
corpus proceeding unless he can show cause for the default and
prejudice resulting therefrom." Teague v. Lane, 489 U.S. 288,
298 (1989) (citing prior Supreme Court case as "applying
procedural default rule to claim that had never been raised in
state court");[19] accord Moore v. Quarterman, 454 F.3d 484, 497
(5th Cir. 2006) ("failure to exhaust may be excused if the
petitioner 'can demonstrate cause for the defaults and actual
prejudice'"); Lee v. Crouse, 451 F.3d 598, 614-615 (10th Cir.
2006). Put another way, "if no state court remedy is available
for the unexhausted claim" because "resort to the state courts
would be futile," then the exhaustion requirement "is satisfied,
but the failure to exhaust 'provides an independent and adequate

_____

[19] As similarly explained in a pre-AEDPA Supreme Court case,
section 2254(b) requires petitioners to exhaust those remedies
that are "'available in the courts of the State.'" Engle v.
Isaac, 456 U.S. 107, 125 (1982). "This requirement, however,
refers only to remedies still available at the time of the
federal petition." Id. The Engle court then reaffirmed the
principles in Wainwright v. Sykes, 433 U.S. 72 (1977), "that any
prisoner bringing a constitutional claim to the federal
courthouse after a state procedural default must demonstrate
cause and actual prejudice before obtaining relief." Engle v.
Isaac, 456 U.S. at 129.

28

state-law ground for the conviction and sentence, and thus
prevents federal habeas corpus review of the defaulted claim,
unless the petitioner can demonstrate cause and prejudice for the
default.'" Armstrong v. Iowa, 418 F.3d 924, 926 (8th Cir. 2005);
accord Neville v. Dretke, 423 F.3d 747, 480 (5th Cir. 2005)
(paraphrasing and quoting Coleman v. Thompson, 501 U.S. 722, 735
n.1 (1991)).

     "[A] claim is procedurally defaulted if it was not presented
to the state courts and it is clear that those courts would have
held the claim procedurally barred." Pike v. Guarino, 492 F.3d
61, 73 (1st Cir. 2007) (citing Coleman v. Thompson, 501 U.S. at
735 n.1, and Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir.
2004)). When the petitioner does not fairly present and thereby
exhaust the federal habeas claim in state court "and the
opportunity to raise that claim in state court has passed, the
petitioner has procedurally defaulted that claim." Perruquet v.
Briley, 390 F.3d at 514.

     The First Circuit in a pre-AEDPA case similarly concluded
that presentation of an unexhausted claim is not required "if it
is clear that the state court would hold the claim procedurally
barred." Hall v. DiPaolo, 986 F.2d 7, 10 (1st Cir. 1993) (citing
Harris v. Reed, 489 U.S. 255, 263 n.9 (1989)). But, when the
petitioner obtains exhaustion "through a procedural default, the
habeas petitioner must show cause for that default and prejudice

arising therefrom before the federal court may reach the merits of his habeas claims." Hall v. DiPaolo, 986 F.2d at 10.

Here, because petitioner obtains exhaustion through a procedural default, he must show cause for that default and prejudice before "the federal court may reach the merits of his habeas claims."[20] Id.; accord Thomas v. Gibson, 218 F.3d 1213, 1221 (10th Cir. 2000) (citing Coleman and explaining that when remedies no longer available for unexhausted claims because state law bars consideration due to failure to raise in prior state proceeding, "claims are considered exhausted and procedurally defaulted" unless the petitioner demonstrates cause and prejudice or miscarriage of justice); Duvall v. Purkett, 15 F.3d 745 (8th Cir. 1994) (requiring showing of cause and prejudice with respect to futile, nonexhausted federal claim). Finally, in "rare cases" a federal court may consider the claim absent a showing of cause "'where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Hall v. DiPaolo,

--------

[20] The rule requiring the last state court to clearly and expressly state that its ruling rests on a procedural default does not apply where the federal "claim was never presented to the state courts." Teague v. Lane, 489 U.S. at 299; accord Harris v. Reed, 489 U.S. at 268 (O'Connor, J., concurring) ("it is simply impossible to 'require a state court to be explicit in its reliance on a procedural default' where a claim raised on federal habeas has never been presented to the state courts at all"). "In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims." Coleman v. Thompson, 501 U.S. at 735 n.1.

986 F.2d at 10; see Murray v. Carrier, 477 U.S. 478, 495-496
(1986) (discussing the actual innocence exception to cases where
the petitioner fails to meet both cause and prejudice); Armstrong
v. Iowa, 418 F.3d at 926; Villot v. Varner, 373 F.3d 327, 337
(3rd Cir. 2004).

As to cause, ordinarily the petitioner must "show that some
objective factor external to the defense impeded counsel's
efforts to comply with the State's procedural rule." Murray v.
Carrier, 477 U.S. at 488; accord Burks v. DuBois, 55 F.3d 712,
716-717 (1st Cir. 1995) (citing Murray v. Carrier, 477 U.S. at
488); Magee v. Harshbarger, 16 F.3d 469, 471 (1st Cir. 1994)
(quoting Murray v. Carrier, 477 U.S. at 488). For example, two
such objective impediments consist of "showing that the factual
or legal basis for the claim was not reasonably available to
counsel or that 'some interference by officials' made compliance
impracticable." Murray v. Carrier, 477 U.S. at 488 (citations
omitted).

No external impediment prevented petitioner from raising
ground two. Petitioner knew the facts but simply failed to
present them as a federal constitutional violation of the
privilege against self incrimination. He also fails to establish
cause through a showing that counsel was ineffective within the
meaning of the Sixth Amendment applying a de novo review or a
more deferential AEDPA review. See Janosky v. St. Amand, 594

31

F.3d at 45 (noting disagreement among courts as to whether de novo or deferential standard applies to ineffective assistance of counsel as means to show cause). Inasmuch as petitioner fails to show cause, this court need not address the prejudice prong. See Magee v. Harshbarger, 16 F.3d at 472 (declining to address prejudice prong "[b]ecause the cause and prejudice requirement is conjunctive"); see also Burks v. DuBois, 55 F.3d at 716 n.3 (not addressing prejudice prong because court found no cause).

Ground two is therefore barred absent a fundamental miscarriage of justice. See generally Janosky v. St. Amand, 594 F.3d at 46 ("federal habeas court may excuse a procedural default if the petitioner can demonstrate that a failure to consider his claim will work a fundamental miscarriage of justice") (citing Coleman, 501 U.S. at 750); Burks v. DuBois, 55 F.3d at 717 (federal court "may overlook a procedural default and hear a barred constitutional claim on the merits if its failure to do so would result in a fundamental miscarriage of justice"). Put another way, notwithstanding the absence of cause, a federal habeas court may proceed to address the merits of ground two "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. at 496; see Hall v. DiPaolo, 986 F.2d at 10 (applying foregoing standard to case involving exhaustion by procedural default); see also Janosky v. St. Amand, 594 F.3d at 46

("miscarriage of justice exception is narrow and applies only in extraordinary circumstances--circumstances in which a petitioner makes some showing of actual innocence").

Here, the historical facts belie the existence of a fundamental miscarriage of justice. Petitioner confessed to being the victim's last fare, to telephoning for a taxicab and to carrying a loaded gun. Commonwealth v. Scoggins, 789 N.E.2d at 1; (Docket Entry # 60, Ex. J, pp. 66-67). An argument ensued when the taxicab driver took a wrong turn. Three shots were fired with one being a face to face shot. Just after 1:20 A.M., the victim collapsed as a result of gunshot wounds near the taxicab shortly after petitioner was seen entering the taxicab at 1:15 A.M.

In sum, state court remedies are no longer available to exhaust the claim based on the violation of the privilege against self incrimination in light of the well established waiver rule. Petitioner fails to show cause or a fundamental miscarriage of justice. Hence, ground two does not warrant habeas relief.

III. <u>Ground Three</u>

Ground 3(a) raises an ineffective assistance of trial counsel claim because counsel did not seek to suppress the confession on the basis that petitioner was not allowed to make a telephone call to a family member, friend or attorney as required under chapter 276. Ground 3(b) alleges trial counsel's

ineffectiveness because he did not fully investigate or interview Holbrook, Campbell, Price and Jermaine Campbell and did not call Campbell, Price and Jermaine Campbell to testify.

Applying a miscarriage of justice standard under section 33E, the SJC rejected ground 3(a) on the merits. The first Justice of the trial court likewise rejected the claim in ground 3(a) on the merits. The SJC reasoned as follows:

> While it is true that, in Massachusetts, unfavorable evidence derived from an intentional denial of a suspect's statutory right to a postarrest telephone call must be suppressed, Commonwealth v. Johnson, 422 Mass. 420, 429, 663 N.E.2d 559 (1996), the police departments in South Carolina are not bound by Massachusetts law. The legality of the procedures employed by the police forces of other States operating in their own jurisdiction is governed by the law of that jurisdiction, see Commonwealth v. Federici, 427 Mass. 740, 742, 696 N.E.2d 111 (1998), and South Carolina has no statutory counterpart to § 33A.

Commonwealth v. Scoggins, 789 N.E.2d at 1085.

As to ground 3(b), petitioner presented the claim in the first new trial motion. The first Justice rejected the claim because petitioner did not support the claim with affidavits from the witnesses, trial counsel or his investigator and there was nothing in petitioner's affidavit to support the assertion that the witnesses would assist the defense. Specifically, the Justice found "[n]othing in [petitioner's] self-serving affidavit" that led him "to believe that there is any support to [petitioner's] position that these witnesses would have assisted

his defense."[21]  (Docket Entry # 8, Ex. G).  Petitioner included

the claim in ground 3(b) on appeal of the denial of the first new

trial motion.  (Docket Entry # 8, Ex. H).  The SJC rejected the

claim as "without merit."  See Commonwealth v. Scoggins, 789

N.E.2d at 1086 (having reviewed "remaining arguments (which

---

[21]  Respondent initially seeks dismissal of ground 3(b)
because of a procedural default.  He submits that the first
Justice denied the claim because of a state procedural rule, to
wit, the absence of affidavits allegedly required under Rule
30(c)(3), Mass. R. Crim. P. ("Rule 30(c)(3)") (Docket Entry # 59,
¶ IV).  It is debatable whether the Justice denied the claim due
to the absence of affidavits or simply the failure to make a
proper showing on the merits.  He did not cite Rule 30(c)(3) or
case law setting out any such requirement.  More than likely, he
rejected the claim because trial counsel was not constitutionally
ineffective.  Afterall, the Commonwealth's opposition to the
first new trial motion included a procedural category denoted
"Procedural Issues."  The ineffective assistance of counsel trial
claim for failing to investigate is not addressed as a procedural
issue in this portion of the Commonwealth's brief or elsewhere.
Thus, whereas the Commonwealth argued that other claims were
procedurally barred, it addressed the ineffective assistance of
trial counsel claim for failing to investigate on the basis that
petitioner did not demonstrate "that defense counsel was
constitutionally ineffective" and the court "should deny the
motion without an evidentiary hearing" because neither the motion
nor the affidavits raised "a substantial issue."  (Docket Entry #
8, Ex. G, App. 82-90).
     Given an "objective assessment of the record," it is more
than likely that the first Justice rejected the argument based on
its substance, to wit, a lack of an adequate showing that trial
counsel was constitutionally ineffective to warrant a hearing
and/or an allowance of the motion.  See Pina v. Maloney, 565 F.3d
48, 53 (1st Cir. 2009) (examining briefs and arguments before the
gatekeeper to decide the reason, basis and substance of
gatekeeper's decision); see generally Jewett v. Brady, 634 F.3d
67, 77 (1st Cir. 2011) (bypassing procedural default doctrine and
addressing merits because "'doctrine is not technically
jurisdictional'" and a merits review is "'easily resolvable
against the habeas petitioner'").

relate to alleged ineffective assistance of counsel) in the
defendant's pro se brief . . ., they are without merit").

In the second new trial motion, petitioner raised a portion
of ground 3(b), to wit, trial counsel's ineffectiveness due to
the failure to interview Holbrook prior to trial. Petitioner
supported the second new trial motion with affidavits, including
Holbrook's affidavit. The second Justice of the trial court
found that the waiver doctrine barred the claim and that there
was "nothing to demonstrate ineffective assistance." (Docket
Entry # 60, Ex. L, A. 117-118).

As to grounds 3(a) and 3(b), therefore, the SJC rejected the
ineffective assistance of trial counsel claim under the statutory
standard of section 33E applicable to appeals of first degree
murder convictions. That standard is "more favorable to the
defendant than the federal constitutional standard articulated by
the Supreme Court in Strickland." Knight v. Spencer, 447 F.3d 6,
10 (1st Cir. 2006); see Commonwealth v. Thompson, 725 N.E.2d 556,
567 (Mass. 2000) (citing Commonwealth v. Wright, 584 N.E.2d 621,
624 (Mass. 1992), wherein SJC noted that, "statutory standard of
§ 33E is more favorable to a defendant than is the constitutional
standard for determining the ineffectiveness of counsel"); see
generally Commonwealth v. Mello, 649 N.E.2d 1106, 1118 & n.16
(Mass. 1995) (noting that if state ineffective counsel standard
is met then federal standard is met). Accordingly, this court

"presume[s] the federal law adjudication [by the SJC] to be subsumed within the state law adjudication" and therefore "'adjudicated on the merits' within the meaning of § 2254." McCambridge v. Hall, 303 F.3d at 35.

The "more favorable 'substantial likelihood of a miscarriage of justice' standard" is not "'contrary to' the Strickland criterion." Knight v. Spencer, 447 F.3d at 16. This court therefore turns to the unreasonable application prong of section 2254(d) review.

The Supreme Court "recently reinforced the 'doubly' deferential standard that applies to a state prisoner's claims in a federal habeas petition that a state court has unreasonably applied the Strickland principles." Jewett v. Brady, 634 F.3d at 75 (quoting Harrington v. Richter, 131 S.Ct. 770, 788 (2011)). Under Strickland v. Washington, 466 U.S. 668 (1984), the petitioner has the burden to show by a preponderance of the evidence that: "(1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996); accord Gonzalez-Soberal v. United States, 244 F.3d 273, 277 (1st Cir. 2001) (same).

Under the first prong, the petitioner must show that "'counsel made errors so serious that counsel was not functioning

as the "counsel" guaranteed the defendant by the Sixth Amendment.'" Smullen v. United States, 94 F.3d at 23 (quoting Strickland v. Washington, 466 U.S. at 687). Under Strickland there is also "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland v. Washington, 466 U.S. at 689. Consequently, the ineffective assistance prong is satisfied "only where, given the facts known at the time, counsel's 'choice was so patently unreasonable that no competent attorney would have made it.'" Knight v. Spencer, 447 F.3d at 15.

As to a failure to investigate, "trial counsel 'has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" Janosky v. St. Amand, 594 F.3d at 49 (quoting Strickland, 466 U.S. at 691). The proper focus in assessing a decision not to investigate is "reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. "Beyond the general requirement of reasonableness, 'specific guidelines are not appropriate'" and "Strickland itself rejected the notion that the same investigation will be required in every case." Cullen v. Pinholster, 131 S.Ct. at 1407.

The second Strickland prong requires a showing that

"counsel's errors prejudiced the defense." Gonzalez-Soberal v. United States, 244 F.3d at 277. "'[A] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'" differs from the section 33E miscarriage of justice standard inasmuch as the petitioner is not required to "prove that the errors were more likely than not to have affected the verdict." Id. at 278.

The proper focus is on "the 'fundamental fairness of the proceeding.'" Id.; accord Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (prejudice prong focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair"). A "reasonable probability" is therefore "a probability sufficient to undermine confidence in the outcome." Knight v. Spencer, 447 F.3d at 15 (internal quotation marks omitted). The petitioner must show "that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 687; see also Lockhart v. Fretwell, 506 U.S. at 372 ("[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him").

As to ground 3(a), the SJC's adjudication of the failure of trial counsel to seek suppression based on the non-compliance

with Massachusetts state law requiring police to permit an arrestee's use of a telephone to contact family, friends or an attorney was not objectively unreasonable. As noted by the SJC, "police departments in South Carolina are not bound by Massachusetts law." Commonwealth v. Scoggins, 789 N.E.2d at 1085.[22] An argument to apply Massachusetts law to a police department in South Carolina was futile. See Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999) ("counsel's performance was not deficient if he declined to pursue a futile tactic"); see, e.g., Knight v. Spencer, 447 F.3d at 16 ("Knight's counsel could not have rendered ineffective assistance in failing to object to alleged errors of state evidentiary law that" were nonexistent). Hence, the SJC's decisions rejecting the ineffective assistance of counsel claim based on the failure to seek suppression due to a violation of chapter 276 was not an objectively unreasonable application of Strickland.

Ground 3(b) presents a closer issue. Trial counsel did not interview Holbrook before she testified at trial. At the time, petitioner submits he informed trial counsel that he had not made any statements to Holbrook and that Campbell, Price and Jermaine Campbell could verify this information and would testify at

---

[22]  The first Justice of the trial court likewise noted, "It is . . . questionable that c.276, sec. 33A was applicable at the time and place that [petitioner] made his statement." (Docket Entry # 8, Ex. G).

trial.  (Docket Entry # 8, Ex. G, Petitioner's Affidavit, ¶ 22).

At trial, trial counsel effectively cross examined Holbrook, who was the mother of a child she had with Campbell, her estranged boyfriend.[23]  See generally Harrington v. Richter, 131 S.Ct. 770, 791 (2011) (reversing lower court's finding unreasonable application of Strickland while noting that, "In many instances cross-examination will be sufficient to expose defects in an expert's presentation" and attorney "conducted a skillful cross-examination").  Given the information that petitioner had not made any statements to Holbrook, trial counsel made a relatively reasonable decision that interviewing Holbrook was not necessary and that he could uncover the discrepancies about petitioner not having spoken to her on cross examination.  Furthermore, interviewing Holbrook prior to trial might prematurely advise her of this tactic.[24]

At trial, trial counsel uncovered that it was Campbell as opposed to petitioner who told Holbrook that petitioner had brought "the gun he used" with him and it was the gun Campbell, not petitioner, told her "was used to shoot the cab driver."

_____

[23]  Holbrook testified about statements petitioner made that he "was going to stick up the cab driver" who then "got scared." (Docket Entry # 8, Ex. E; Tr. III-128).  She also recounted hearing petitioner say "he couldn't take cabs anymore."  (Docket Entry # 8, Ex. E; Tr. III-131).

[24]  Although an interview might have uncovered the housing inducement or the perjury statements, the ineffectiveness determination is not made in hindsight.

41

(Docket Entry # 8, Ex. F, pp. 73-74; Tr. III-139 & 140).  Trial
counsel also brought out that Holbrook made a complaint to South
Carolina police that Campbell had beaten her up and that she
wanted the police to arrest Campbell.  Trial counsel also had
Holbrook acknowledge that she told the police where petitioner
was when she made the complaint against Campbell and that she
went to the police because she was mad at Campbell.  (Docket
Entry # 8, Ex. F, pp. 71-72; Tr. III-137 & 138).

As to the decision not to interview Campbell or have him
testify, Campbell was petitioner's uncle.  The relationship
therefore raised the possibility of Campbell's bias in favor of
petitioner as his relative and the prospect of Campbell's
impeachment due to a prior inculpatory statement to police.[25]
Interviewing Price, who lived in South Carolina, and Jermaine
Campbell, a participant of a card game with Campbell and Holbrook
at Price's house during which petitioner purportedly spoke about
robbing the victim, might uncover evidence negating Holbrook's
recitation of petitioner's inculpatory statements.  If these
individuals testified, however, they would be subject to cross

---

[25] Campbell was listed as a witness by the Commonwealth.
Discussion between the trial judge, trial counsel and the
Assistant District Attorney indicated that Campbell might recant
his prior testimony to police about petitioner robbing the
taxicab driver.  The trial judge directed the Commonwealth to
reimburse trial counsel for the cost of getting Campbell to
Massachusetts to testify.  (Docket Entry # 8, Ex. F; Tr. I-38-
45).

examination regarding their bias as petitioner's friends and/or relatives.  Additional witnesses also might further focus the jury's attention on the inculpatory statements.  See Cullen v. Pinholster, 131 S.Ct. at 1407 ("[t]here comes a point where a defense attorney will reasonably decide that another strategy is in order, thus 'making particular investigations unnecessary'") (internal brackets omitted).

In light of the foregoing, trial counsel thus relied on his ability to cross examine Holbrook to uncover that petitioner did not make the statements.  The reasonable decision to rely on cross examination of Holbrook also lessened if not eliminated the need to interview Campbell, Price and Jermaine Campbell.

In sum, under the circumstances, the SJC's rejection of the claim as "without merit" as well as the rejections of the similar claim by the first Justice were not an objectively unreasonable applications of Strickland's ineffectiveness prong.

As to prejudice, trial counsel conducted an able, effective and thorough cross examination of Holbrook and exposed the weaknesses in Holbrook's testimony.  He uncovered Holbrook's relationship with and anger towards Campbell, petitioner's uncle. At one point during cross examination, he had Holbrook agree that "everything" she was telling to the jury was told to her by someone other than petitioner.  The exchange reads as follows:

    Q.  So everything you're telling us somebody else told you?
    [Petitioner] didn't tell you that.  Correct?

A.  Correct.

(Docket Entry # 8, Ex. F, Tr. III-141).  Petitioner fails in his burden to show a reasonable probability that but for trial counsel's failure to interview Holbrook, Campbell, Price and Jermaine Campbell and failure to call the latter three individuals to testify, the result would have been different.

Ground 3(b) therefore does not provide a basis for habeas relief.  The rejections of the claim by the SJC and the first Justice were not objectively unreasonable applications of Strickland.

IV.  Ground Four

Respondent first moves to dismiss the prosecutorial misconduct claims on the basis there was no prosecutorial misconduct and the SJC's decision was a reasonable application of Donnelly v. DeChristofor, 416 U.S. 637, 642 (1974).  Second, respondent maintains that petitioner did not raise the prosecutorial misconduct claims in the original petition as required by Rule 2(c), 28 U.S.C. foll. § 2254.  Third, respondent objects to the proposed amendment to add the prosecutorial misconduct claims as untimely.

A.  Rule Two

Rule 2(c) provides that the petition must "specify all the grounds for relief which are available to the petitioner."  Rule 2(c), 28 U.S.C. foll. § 2254.  To support the Rule 2 argument,

respondent cites <u>Adams v. Armontrout</u>, 897 F.2d 332, 333 (8th Cir.

1990) (affirming district court's return of habeas petition due

to non-compliance with Rule 2(c)), and <u>Smiley v. Maloney</u>, 2003 WL

23327540, *16 n.39 (D.Mass. Oct. 31, 2003) (Rule 2(c) requires

"the petition for a writ of habeas corpus, not subsequently filed

memorandum," to define the claims).  (Docket Entry # 59, ¶ V).

The argument lacks merit for a number of reasons.  First,

petitioner is proceeding pro se.  <u>See</u> <u>Jones v. McKee</u>, 2010 WL

3522947, *5 (N.D.Ill. Sept. 2, 2010) (refusing to dismiss

petition based on Rule 2(c) in light of the petitioner's pro se

status); <u>Hasset v. Belleque</u>, 2008 WL 5046317, *1 (D.Or. Nov. 21,

2008) (noting that the petitioner filed original petition pro se

and that non-compliance with "Rule 2(c) is not a sufficient

ground for dismissal under the circumstances of this case").  The

prosecutorial claims are also specific and not conclusory.  <u>Cf.</u>

<u>Stuckey v. Rios</u>, 2011 WL 1344536, *1 (E.D.Cal. April 8, 2011)

(citing Rule 2(c) and stating that "vague, conclusory, or

palpably incredible" allegations in petition "are subject to

summary dismissal").  Finally, requiring petitioner to adhere to

Rule 2(c) at this stage in the proceedings will not serve a

"prime purpose" of the rule which "is to assist the district

court in determining whether the State should be ordered to 'show

cause why the writ should not be granted.'"  <u>Mayle v. Felix</u>, 545

U.S. 644, 656 (2005).  Accordingly, the Rule 2(c) argument is not

well taken and fails to provide a basis to dismiss ground four, or in fact any other ground, without prejudice.

B. Section 2254(d)(1) Review

Addressing respondent's first argument, ground four consists of a number of prosecutorial misconduct claims. (Docket Entry # 54, pp. 15-41). On direct appeal and on appeal of the denial of the first new trial motion (Docket Entry # 8, Ex. E, pp. 38-50; Docket Entry # 8, Ex. C, pp. 11-14)), petitioner presented two of the claims he now seeks to present in this petition (Docket Entry # 54, pp. 15-24). The first claim involves prosecutorial misconduct by going outside the evidence and misstating evidence during closing argument. (Docket Entry # 8, Ex. E, pp. 38-44; Docket Entry # 54, pp. 15-19). The second claim involves the prosecutor improperly vouching for certain witnesses during closing argument. (Docket Entry # 8, Ex. E, pp. 44-50; Docket Entry # 54, pp. 20-24). The SJC rejected the first claim on the merits. The relevant portion of the opinion reads, "While the defendant complains that the prosecutor referred to evidence outside the record in her closing argument, the alleged misstatements were, in fact, a permissible argument based on evidence properly before the jury." Commonwealth v. Scoggins, 789 N.E.2d at 1085-1086.[26]

---

[26] Respondent mistakenly asserts that the SJC addressed the remaining prosecutorial claim[s] as "without merit." The substance of the SJC's above statement addresses only the false

46

Clearly established Supreme Court law includes "the proposition that the 'Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence.'" Donnelly v. DeChristoforo, 416 U.S. at 646. Recognizing that the Supreme Court "has long condemned egregious prosecutorial misconduct such as manipulation of the evidence," Miranda v. Bennett, 322 F.3d 171, 181 (2nd Cir. 2003) (internal brackets and quotation marks omitted), the relevant inquiry is whether the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. at 643; accord Obershaw v. Lanham, 453 F.3d 56, 65 (1st Cir. 2006) ("relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process'"). Undesirable or universally condemned remarks are not enough. Darden v. Wainwright, 477 U.S. 168, 181 (1986) (recognizing "it is not enough that prosecutors' remarks were undesirable or even universally condemned") (internal quotation marks omitted).

---

evidence argument as opposed to the vouching argument. The SJC also noted that the remaining arguments "relate to alleged ineffective assistance of counsel" and were "without merit." Commonwealth v. Scoggins, 789 N.E.2d at 1086 n.6. The opinion therefore only refers to these rejected claims as relating to ineffective assistance of counsel, not prosecutorial misconduct.

47

As determined by the SJC, the comments were permissible argument based on the evidence. Simply stated, the prosecutor did not stray outside the reasonable inferences taken from the evidence at trial. The decision rejecting the prosecutorial claim was therefore not an objectively unreasonable application of Donnelly, assuming that the SJC applied a functionally equivalent to Donnelly, see Dagley v. Russo, 540 F.3d 8, 15 n.3 (1st Cir. 2008). The decision also survives a de novo review inasmuch as the evidence supported the comments.

Accordingly, this forecloses habeas relief based on one of the prosecutorial claims, to wit, the assertion that the prosecutor misstated the evidence and expressed her personal belief in certain evidence during closing argument. (Docket Entry # 54, pp. 15-19). Respondent challenges the remaining prosecutorial misconduct claims as untimely.[27]

C. Statute of Limitations and Rule 15(c)

In addition to the foregoing prosecutorial misconduct claim based on misstating the evidence, the September 16, 2010 memorandum in support of the petition includes six more

---

[27] For reasons set forth below, the above prosecutorial misconduct claim based on misstating evidence during closing argument (Docket Entry # 54, pp. 15-19) is also untimely.

prosecutorial misconduct claims.  (Docket Entry # 54, pp. 20-41).

Respondent objects to petitioner's proposed amendment (Docket

Entry # 67) to include these new claims which differ in time and

type to the three claims in the original petition.  (Docket Entry

# 70).

Petitioner raised one of the six new claims on direct appeal

and on appeal of the denial of the first new trial motion.

(Docket Entry # 8, Ex. E, pp. 44-50; Docket Entry # 54, pp. 20-

24).  The SJC did not address the claim.[28]  Petitioner included

the remaining prosecutorial claims (Docket Entry # 54, pp. 25-41)

in the pro se motion to amend the second new trial motion and the

supporting memorandum (Docket Entry # 60, Ex. L, pp. 33-34 & 42-

61).  In denying the second new trial motion, the second Justice

decided that the "pro se claims of prosecutorial misconduct are

waived by the failure to raise the issues in the direct appeal"

and "the claims are unfounded."  (Docket Entry # 60, Ex. L, A.

120).  The second Justice also did not credit the statements in

Holbrook's affidavit.  (Docket Entry # 60, Ex. L, A. 119).

The AEDPA contains a one year statute of limitations for

federal habeas petitions.  28 U.S.C. § 2244(d)(1); <u>Allen v.</u>

---

[28]   See footnote 26.

Siebert, 552 U.S. 3, 4 (2007). The one year time period begins

to run on "'the date on which the judgment became final by the

conclusion of direct review or the expiration of the time for

seeking such review.'" Trapp v. Spencer, 479 F.3d 53, 58 (1st

Cir. 2007) (quoting section 2244(d)(1)(A)). Accordingly, the one

year period began to run on September 16, 2003, after the SJC

concluded direct review on June 18, 2003, and the 90 day period

for filing a petition for certiorari review expired. See Cordle

v. Guarino, 428 F.3d 46, 48 (1st Cir. 2005) ("SJC affirmed

Cordle's convictions on March 11, 1992; her convictions became

final ninety days thereafter").

Under section 2244(d)(2), habeas petitioners receive the

benefit of a provision which tolls the one year period during the

time a "properly filed" post-conviction state application for

collateral review is "pending." 28 U.S.C. § 2244(d)(2); Pace v.

DiGuglielmo, 544 U.S. 408, 410 (2005). In order to encourage

exhaustion of state court remedies while still protecting the

need for finality, see Duncan v. Walker, 533 U.S. 167, 178 (2001)

(section 2244(d)(2) "balances the interests served by the

exhaustion requirement and the limitation period"), section

2244(d)(2) excludes the time period during the pendency of a

properly filed application for state collateral review with the

following language:

> The time period during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). Because "the word 'State' modifies both the terms 'post-conviction' and 'other collateral review,'" Lawrence v. Florida, 549 U.S. 327, 332 n.2 (2007), section 2244(d)(2) tolling does not apply to federal petitions. Duncan v. Walker, 533 U.S. at 181-182 ("an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2)").

Applying these principles to the case at bar, the conviction became final on September 16, 2003, 90 days after the SJC affirmed the conviction and the denial of the first new trial motion. Petitioner filed this federal petition in April 2004. The original petition is therefore timely filed with respect to the claims therein, i.e., grounds one, two, 3(a) and 3(b). Because the tolling provision does not apply to a federal habeas petition, however, the one year period expired on September 16, 2004. The November 30, 2007 filing of the second new trial motion did not restart or resurrect the expired one year

limitations period.  See Cordle v. Guarino, 428 F.3d at 48 n.4

("'[s]ection 2244(d)(2) only stops, but does not reset, [the

AEDPA] clock from ticking and cannot revive a time period that

has already expired'").

Except for equitable tolling discussed infra, Rule 15(c)(2)

provides the only means to salvage the untimely prosecutorial

misconduct claims filed on September 16, 2010.[29]  The Supreme

Court addressed the applicability of Rule 15(c)(2)'s relation

back "provision in the context of the AEDPA's one-year statute of

limitations" in Mayle v. Felix, 545 U.S. at 656.  Rule

---

[29]  Petitioner points out that this court retained
jurisdiction of the petition while he returned to state court to
exhaust state court remedies and file the second new trial
motion.  He contends that respondent's position would result in
every mixed petition being untimely.  (Docket Entry # 71).
Critically, however, petitioner did not file the prosecutorial
claims in the original petition and then return to state court to
exhaust the claims while this court retained jurisdiction.
Rather, petitioner seeks to bring the claims for the first time
in the September 2010 memorandum.
    With respect to Rule 15(d), Fed. R. Civ. P., the
prosecutorial misconduct claims do not articulate a supplemental
event that took place after the April 2004 filing of the federal
petition.  The facts took place at and around the time of the
trial as did the events depicted in Holbrook's 2007 affidavit
even though petitioner did not discover all of the events in the
affidavit until CPCS counsel interviewed Holbrook.  Exercising
this court's discretion, Rule 15(d) does not apply.  See, e.g.,
McDonald v. Hall, 579 F.2d 120, 121 n.1 (1st Cir. 1978)
(rejecting characterization of filing as Rule 15(d) motion
inasmuch as "complaint was filed on April 25, 1977, yet the
hearing complained of in the supplemental complaint took place on
March 9, 1977" and, hence, motion is "one to amend the original
pleading").  Petitioner's contention that he believed he was
supplementing the petition with the additional grounds (Docket
Entry # 71) does not dictate the application of Rule 15(d).

15(c)(1)(B), which applies to section 2254 petitions, <u>see</u> 28

U.S.C. § 2242 ("section 2242"); <u>Mayle v. Felix</u>, 545 U.S. at 655

(citing section 2242 and Rule 11, presently Rule 12, 28 U.S.C.

foll. § 2254), allows relation back when the claim asserted in

the amended petition "'arose out of the conduct, transaction, or

occurrence set forth or attempted to be set forth in the original

pleading.'" <u>Mayle v. Felix</u>, 545 U.S. at 656 (quoting Rule

15(c)). Because the one year limitations period in section

2244(d) evinces Congress' decision to expedite habeas attacks

"'by placing stringent time restrictions on the them,'" <u>Id.</u>

(internal brackets omitted), the relation back provision is

"strictly construed." <u>United States v. Ciampi</u>, 419 F.3d 20, 23

(1st Cir. 2005).[30]

Rule 15(c) therefore "relaxes, but does not obliterate," the

AEDPA statute of limitations. <u>Mayle v. Felix</u>, 545 U.S. at 659.

In the habeas context, the rule requires and "depends on the

existence of a common 'core of operative facts' uniting the

original and newly asserted claims." <u>Id.</u> In other words, the

claim in the proposed amended petition "must arise from the 'same

core facts,' and not depend upon events which are separate both

---

[30] Although the First Circuit in <u>Ciampi</u> considered relation
back in the context of a section 2255 petition, the court relied
extensively on the <u>Mayle</u> decision. The language of the
limitations provision, 28 U.S.C. § 2244(d), and Rule 15(c) is
also the same regardless of whether such language applies to a
section 2254 or 2255 petition.

in time and type from the events upon which the original claims depended." U.S. v. Ciampi, 419 F.3d at 24.

The claim in the original pro se petition in Mayle was that "the admission into evidence of videotaped testimony of a witness for the prosecution violated his rights under the Sixth Amendment's Confrontation Clause." Mayle v. Felix, 545 U.S. at 648. The new and untimely claim Mayle filed once represented by counsel was that "the police used coercive tactics to obtain damaging statements from him, and that admission of those statements at trial violated his Fifth Amendment right against self-incrimination." Id. at 649. Although both claims "involve[d] the admission of out-court-statements during the prosecutor's case in chief," they were not related because one arose from Mayle's own statements to the police in violation of the Fifth Amendment and the other arose from a witness' videotaped testimony in violation of the Confrontation Clause. Id. at 650 & 657; see U.S. v. Ciampi, 419 F.3d at 24 (parenthetical describing Mayle as "holding that claimed violations in admission of out-of-court statements were distinct under Rule 15, inasmuch as one involved a Fifth Amendment challenge to the defendant's own pretrial statements, and the other involved a Confrontation Clause challenge to videotaped witness testimony").

The examples provided by the Court in Mayle of claims that

arise from "a common 'core of operative facts'" do not bode well for the timeliness of petitioner's prosecutorial misconduct claims.  The examples, set out below, evidence that the time and the type of the claim matters.

> For example, in <u>Mandacina v. United States</u>, 328 F.3d 995, 1000-1001 (8th Cir. 2003), the original petition alleged violations of <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), while the amended petition alleged the Government's failure to disclose a particular report. Both pleadings related to evidence obtained at the same time by the same police department.  The Court of Appeals approved relation back.  And in <u>Woodward v. Williams</u>, 263 F.3d 1135, 1142 (10th Cir. 2001), the appeals court upheld relation back where the original petition challenged the trial court's admission of recanted statements, while the amended petition challenged the court's refusal to allow the defendant to show that the statements had been recanted.

<u>Mayle v. Felix</u>, 545 U.S. at 648.

Petitioner's proposed amendment (Docket Entry # 67) to include the six additional prosecutorial misconduct claims (Docket Entry # 54, pp. 20-41) in the original petition is without merit.  The prosecutorial misconduct claims at issue (Docket Entry # 54, pp. 20-41; Docket Entry # 67, ¶¶ 12D(1)-(2) & 12D(4)-(7)) do not arise from the same core facts as those supporting the claims in the original petition.  Rather, they arise from events that are separate in time and type from the events upon which grounds one, two, 3(a) and 3(b) depend.

In the event this court denies the amendments as untimely, petitioner submits that equitable tolling applies.  Although the

First Circuit recognizes the doctrine as applicable to the non-jurisdictional statute of limitations in section 2244(d), equitable tolling is the exception not the rule and is "invoked only 'sparingly.'" Neverson v. Farquharson, 366 F.3d 32, 41 (1st Cir. 2004) ("equitable tolling should be invoked only 'sparingly'"); Lattimore v. DuBois, 311 F.3d 46, 55 (1st Cir. 2002) (it is "'pellucid "that equitable tolling, if available at all, is the exception rather than the rule"'"); Donovan v. Maine, 276 F.3d 87, 93 (1st Cir. 2002). Resort to equitable tolling of the AEDPA's one year limitations period is "'deemed justified only in extraordinary circumstances.'" Neverson v. Farquharson, 366 F.3d at 41; Lattimore v. DuBois, 311 F.3d at 55 (same). Ordinarily, to be entitled to equitable tolling, a petitioner "must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007). Petitioner fails on both fronts.

Petitioner sought and obtained a series of stays in this proceeding in 2004 and 2005 to obtain CPCS counsel. The court dismissed the petition in September 2007 for petitioner's failure to prosecute this action for more than a one year time period. Even overlooking this fact due to the possibility that petitioner

believed the case was stayed (Docket Entry # 27, Ex. 1), the diligence petitioner exhibited does not involve the prosecutorial misconduct claims. The new trial motion eventually filed in the trial court in November 2007 by CPCS counsel did not raise or address the prosecutorial misconduct claims. The second Justice decided that petitioner waived the subsequently filed pro se prosecutorial misconduct claims by not raising them on direct appeal. This court similarly finds that petitioner could have discovered the basis for and raised the prosecutorial misconduct claims on direct appeal. Holbrook testified at trial. Appellate counsel could have interviewed Holbrook and thereby discovered the public housing inducement and/or the threat of a perjury prosecution.

The circumstances do not exhibit a sufficient showing of diligence and/or extraordinary circumstances. Petitioner thus fails in his burden to establish equitable tolling. See Lawrence v. Florida, 549 U.S. at 336 ("Lawrence must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing").

In sum, the prosecutorial misconduct claims based on misstating the evidence (Docket Entry # 54, pp. 15-19) do not

survive section 2254(d) review.  In addition, all of the
prosecutorial misconduct claims are untimely and do not warrant
equitable tolling.

V.  Ground Five

In ground five, petitioner presents a twofold sufficiency of
the evidence challenge.  Citing In re Winship, 397 U.S. 358
(1997), and Jackson v. Virginia, 443 U.S. 307, 316 (1979),
petitioner argues that the evidence was not sufficient to convict
him of first degree murder based either on felony murder or on
deliberate premeditation.  (Docket Entry # 54, pp. 42-48).
Petitioner raised the same claim on direct appeal and on appeal
of the denial of the first new trial motion, again citing both
Winship and Jackson.  (Docket Entry # 8, Ex. E, pp. 31-38).  The
SJC rejected the claim with the statement that, "The evidence
presented at trial was sufficient to convict the defendant of
murder in the first degree based on either theory of which he was
convicted."  Commonwealth v. Scoggins, 789 N.E.2d at 1086.
Respondent maintains that the SJC's decision was not an
unreasonable application of Jackson and, in light of the facts
found by the SJC, the decision satisfied the Jackson standard.
(Docket Entry # 59).

The relevant inquiry under the Due Process Clause in a

section 2254 proceeding alleging insufficient evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. at 319; accord Herrera v. Collins, 506 U.S. 390, 401 (1993) (reiterating the "familiar standard" in Jackson).  The holding in Jackson is "an extension of its previous decision in In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that due process requires that a conviction be supported by proof beyond a reasonable doubt." Hurtado v. Tucker, 245 F.3d 7, 12 n.8 (1st Cir. 2001).

"[T]he Jackson inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." Herrera v. Collins, 506 U.S. at 402.  Applying this clearly established law requires an examination of the substantive elements of the crime "as defined by state law."  Jackson v. Virginia, 443 U.S. at 324 n.16.  In other words, applying the Jackson standard involves "specific reference to the elements of the offense as defined by state law."  Hurtado v. Tucker, 245 F.3d at 12 n.8.

At the time of the December 1998 trial, the elements of

felony murder required proof that "'(1) the defendant participated in a felonious enterprise; (2) a homicide occurred during the enterprise; (3) the felony was inherently dangerous to human life or committed with conscious disregard on the part of the defendant for the risk to human life; (4) the death[] was the natural and probable consequence of the felony; and (5) the felony must have been independent of the homicides.'" Commonwealth v. Wade, 697 N.E.2d 541, 544 n.3 (Mass. 1998); Commonwealth v. Morgan, 663 N.E.2d 247, 251 (Mass. 1996) ("there must be evidence of an underlying felony, not only evidence of a homicide").  Petitioner argues that the evidence is insufficient to support each of these essential elements.  (Docket Entry # 54, pp. 18-21).

To support the argument, however, petitioner presents a version of the facts which, while permissible and supported by the evidence, fails to take into account another version of the facts which is also permissible and based on the evidence.  The latter version includes evidence that petitioner was at his mother's house on the evening of May 15, 1997, on Haverhill Street.  He left and telephoned a taxicab from a pay telephone with instructions to meet him at either Wyman or Walnut Street. The evidence also shows that a man telephoned the taxicab company

asking to be driven from Wyman Street and the victim was dispatched for this call at 1:09 A.M.

About six minutes later at 1:15 A.M., petitioner was seen entering the taxicab at the Wyman Street location. Petitioner was the victim's last fare. Petitioner confessed that he carried a loaded gun and pulled the gun out during an argument with the taxicab driver when he made a wrong turn. Petitioner further acknowledged that, "The gun was going off" and that he got in "a little scuffle" with the taxicab driver.

In Massachusetts, a "defendant who kills a victim in the commission or attempted commission of a robbery, while the defendant is armed with a gun, is guilty of murder by application of the felony-murder rule." Commonwealth v. Evans, 454 N.E.2d 458, 462 (Mass. 1983). It is also true that an "attempted commission of an armed robbery is adequate to support a conviction of murder in the first degree under a theory of felony-murder." Commonwealth v. Cannon, 869 N.E.2d 594, 602 (Mass. 2007).

Here, the evidence sufficiently shows that petitioner carried a loaded gun into the taxicab that was dispatched to the Wyman Street location. He was planning to "stick up the cab driver" and the two got into an argument or a "little scuffle."

(Docket Entry # 8, Ex. F, Tr. III-128). The taxicab driver, however, got scared, jumped out of the taxicab and petitioner fatally shot him as a natural and probable consequence of the attempted robbery. Accordingly, the SJC's decision that the evidence was sufficient to convict petitioner of first degree murder based on a felony murder theory grounded upon an attempted robbery was not an objectively unreasonable of Jackson and In re Winship. See Anderson v. Brady, 2009 WL 801743, *2 (D.Mass. March 26, 2009) ("relevant question, therefore, is whether the SJC's application of the Jackson principle to the facts of the case was 'objectively unreasonable'"). Indeed, the decision was a rational and reasonable conclusion based on the evidence.

Likewise, the SJC's decision that the evidence was sufficient to convict petitioner of first degree murder based on deliberate premeditation was not an objectively unreasonable application of Jackson. "To prove that a defendant committed murder with deliberate premeditation, the Commonwealth must prove that the defendant resolved to kill after a period of reflection." Commonwealth v. Chipman, 635 N.E.2d 1204, 1209 (Mass. 1994) (further noting that "a plan to murder may be formed within seconds"). With a loaded gun, petitioner telephoned a taxicab and waited for it to arrive. The jury could find that he

shot the taxicab driver three times during an argument. One of those three shots was a face to face shot. (Docket Entry # 8, Ex. F, Tr. III-160-161). "The use of a firearm in the killing is sufficient to support a verdict of murder in the first degree based on deliberately premeditated malice aforethought . . . . Evidence that the defendant brought a gun with him to the scene . . . is evidence of planning." Commonwealth v. Horton, 753 N.E.2d 119, 126 (Mass. 2001) (ellipses in original). Petitioner's attempt to discredit the evidence based on the slightly upward trajectory of one of the three shots (Docket Entry # 8, Ex. F, Tr. III-144, 146, 148, 160 & 161) or the alleged absence of evidence to support him making a frontal shot does not establish that the SJC's decision was an unreasonable application of the Jackson standard. The SJC interpreted the evidence before the trial court which was more than sufficient to convict petitioner of premeditated murder.

In sum, the SJC's decision that sufficient evidence existed to convict petitioner of first degree murder based on felony murder or deliberate premeditation was not an unreasonable application of the holdings in Jackson and In re Winship. Ground five does not warrant habeas relief.

VI.  Ground Six

63

In ground six, petitioner raises an ineffective assistance of trial counsel claim based on trial counsel's failure to file a <u>Brady v. Maryland</u>[31] discovery motion or a motion seeking leniency offers, inducements or rewards. Petitioner submits that a motion seeking this exculpatory evidence would have uncovered the leniency or promise of public housing given to Holbrook. (Docket Entry # 54, pp. 64-65).

Respondent seeks dismissal of ground six, which he references as ground seven, due to a failure to exhaust state court remedies. (Docket Entry # 59, p. 26). CPCS counsel did not include the ineffectiveness claim based on the failure to file a pretrial motion for promises, rewards and inducements in the second motion for a new trial.

Petitioner, however, raised the claim in the pro se motion to amend the second motion for a new trial. (Docket Entry # 33; Docket Entry # 60, Ex. L, A. 33). The memorandum in support of the pro se motion to amend includes the same claim and the same language contained in ground six. (Docket Entry # 60, Ex. L, A. 40-42; Docket Entry # 54, pp. 64-65). This was the only ineffective assistance of counsel claim presented in the pro se motion to amend the second new trial motion.

The Commonwealth opposed the second new trial motion and addressed the ineffective assistance based on the failure to

_____

[31] 373 U.S. 83 (1963).

interview claim and the pro se ineffective assistance based on the failure to file the discovery motion for exculpatory evidence.  (Docket Entry # 60, Ex. L., A. 82, 85-91 & 94).  The Commonwealth argued inter alia that Holbrook had the right under state law to be informed by the prosecutor of financial assistance as well as other social services for victims of domestic abuse.  (Docket Entry # 60, Ex. L. A. 92-93) (citing Mass. Gen. L. ch. 258B, § 3(e) ("section 3(e)")).  The Commonwealth also attached an e-mail from the victim witness advocate to the prosecutor reflecting that Holbrook might need a copy of the police report from South Carolina to support Holbrook's request for "section 8" housing.  (Docket Entry # 60, Ex. L., A. 109 & 119).

In a memorandum of decision and order, the second Justice acknowledged the pro se ineffective assistance of counsel claim (Docket Entry # 60, Ex. L, A. 116, n.1) but did not expressly address trial counsel's failure to file a motion seeking promises, rewards or inducements.  With respect to the ineffective assistance of counsel claim regarding the failure to interview in the second new trial motion filed by CPCS counsel, the second Justice expressly and unequivocally found the claim waived and that there was nothing to demonstrate ineffective assistance of counsel.

The second Justice also found Holbrook's affidavit not

credible and that the affidavit of the lead investigator, Trooper Coppenrath, was credible. Holbrook's affidavit states that, "The police helped me obtain public housing in Massachusetts" and with their help, "I was able to enter public housing after only three months even though the waiting list was over one year long." (Docket Entry # 30). In contrast, Trooper Coppenrath avers that he "did not make any promises, or offer any rewards or inducements in exchange for her testimony." (Docket Entry # 60, Ex. L, A. 103). Trooper Coppenrath was the lead investigator and he was the one who interviewed Holbrook in August 1997 before the trial.

This credibility determination and the resolution of this fact by the second Justice discounts an ineffective assistance of counsel claim based on the failure to file a discovery motion to uncover the public housing. In crediting Trooper Coppenrath's affidavit and in not crediting Holbrook's affidavit, the second Justice found credible Trooper Coppenrath's averment that, as the lead investigator, he never offered Holbrook any promise, reward or inducement for her testimony, a finding that would include expedited treatment in procuring section 8 housing.[32] The second

---

[32] Holbrook's affidavit states that, "The police helped me obtain public housing in Massachusetts. With help from the police, I was able to enter public housing after only three months even though the waiting list was over one year long." (Docket Entry # 30). He attests that he did not make any promises or offer any rewards or inducements. (Docket Entry # 60, Ex. L, A. 102-103).

Justice also found that Holbrook was looking for section 8 housing in the New Bedford area and noted that the e-mail explained the reasons she needed proof of the domestic abuse in South Carolina to make her eligible for section 8 housing. (Docket Entry # 60, Ex. L., A. 119).

CPCS counsel included the ineffective assistance claim based on the failure to file a Brady v. Maryland motion or a motion for promises, rewards or inducements in the petition to a single justice of the SJC for leave to appeal the denial.[33] (Docket Entry # 60, Ex. K, p. 17). The Commonwealth argued inter alia that petitioner failed to establish the ineffective assistance of counsel claim based on the failure to discover the inducements offered Holbrook. (Docket Entry # 60, Ex. M, pp. 10-11). The single Justice of the SJC summarily denied leave to appeal.

As previously explained, it is black letter law that exhaustion requires the petitioner to fairly and recognizably present the claim to the state's highest court, the SJC. Janosky v. St. Amand, 594 F.3d at 50 ("the SJC is the highest court in the state system" and "exhaustion [thus] requires presentation of

_____

[33] Section 33E "requires defendants convicted of murder in the first degree to obtain leave from a single justice of [the SJC] in order to appeal postconviction motions." Dickerson v. Attorney General, 488 N.E.2d 757, 758 (Mass. 1986); accord Lykus v. Commonwealth, 732 N.E.2d 897, 899 (Mass. 2000) ("§ 33E prevents an appeal of '"any motion" filed in the Superior Court after § 33E review without leave of a single justice of [the SJC]'").

67

the claim in question to that court"); <u>Clements v. Maloney</u>, 485 F.3d 158, 162 (1st Cir. 2007) ("standard must be met, as a general rule, by "fairly present[ing]" a federal claim "within the four corners of the ALOFAR"). Here, petitioner included the claim in a pro se motion to amend a new trial motion at a time when he had counsel. More importantly, CPCS thereafter included the claim in the petition to a single justice of the SJC. Thus, this is not a situation where a petitioner raises a federal constitutional claim to the appeals court but then completely abandons the claim in an application for leave to obtain further appellate review commonly known as an ALOFAR. <u>See</u> <u>Scarpa v. DuBois</u>, 38 F.3d at 7 (distinguishing <u>Mele v. Fitchburg</u>, 850 F.2d at 818-819, on this basis). Rather, petitioner presented the claim to the second Justice and CPCS counsel presented the claim to the single Justice of the SJC. Contrary to respondent's argument, petitioner adequately exhausted his state court remedies with respect to ground six.

Petitioner, however, seeks to amend the petition to include ground six. (Docket Entry ## 64, 67 & 68). Respondent objects on the basis of the statute of limitations and that ground six does not relate back to the original petition. (Docket Entry # 70). The relevant law and the untimeliness of new claims in the

68

September 2010 memorandum (Docket Entry # 54) is set out in section IV(C).

Ground six asserts that trial counsel was ineffective because he did not file a motion for promises, rewards and inducements. According to ground six, if trial counsel had filed such a motion, he would have discovered the public housing inducement provided to Holbrook. Ground 3(b) in the original petition complains, in part, that trial counsel was ineffective because he did not fully investigate or interview Holbrook before the trial. (Docket Entry # 54, pp. 64-65). According to ground 3(b), trial counsel rendered ineffective assistance because he did not interview Holbrook and thereby uncover the information that she lacked first hand knowledge regarding the statements she made to police that petitioner told Holbrook he had tried to rob a taxicab driver and made other inculpatory statements. (Docket Entry # 2). Both ineffective assistance of counsel claims focus upon trial counsel's conduct and they focus on conduct that took place at the same time, i.e., prior to trial in relation to Holbrook. Both claims involve failures on the part of trial counsel prior to trial that he either did not investigate and interview Holbrook or he did not file a motion for promises, rewards and inducements that would have uncovered Holbrook's bias.

It is true that one claim concerns trial counsel's decision not to interview Holbrook whereas the other claim involves trial counsel's decision not to file a motion to discover promises, rewards and inducements that would reveal the housing assistance police gave to Holbrook. This distinction does not eliminate the commonality of the core facts which involve the conduct of trial counsel in relation to Holbrook prior to trial. Ground six therefore relates back under Rule 15(c) to the timely ground 3(b) in the original petition.

Respondent next argues that the second Justice found the claim waived and, accordingly ground six is procedurally defaulted. (Docket Entry # 70, p. 7). In the first paragraph of the discussion section of the memorandum and order, the second Justice summarized the two issues petitioner raised through CPCS counsel, i.e., the prejudicial hearsay testimony of Holbrook and the ineffective assistance of trial counsel for the failure to interview Holbrook. The second Justice also noted in a footnote that petitioner raised a pro se ineffective assistance of counsel claim (Docket Entry # 60, Ex. L., A. 116), i.e., the claim that corresponds to ground six. Shortly thereafter, the second Justice determined that, "The issues [petitioner] raises now were known or knowable to appellate counsel during his direct appeal" and, thus, "the doctrine of waiver bars the defendant's current claims." (Docket Entry # 60, Ex. L., A. 117).

A long standing rule bars federal courts from reviewing
state court decisions that rest on "independent and adequate
state ground[s]." Trest v. Cain, 522 U.S. 87, 118 (1997); see
also Torres v. Dubois, 174 F.3d 43, 45-46 (1st Cir. 1999). "When
a state court decision rests on a state procedural rule that is
independent of the federal question and adequate to support the
judgment, a federal court may not review a question of federal
law raised in a petition for writ of habeas corpus." Moore v.
Ponte, 186 F.3d 26, 31 (1st Cir. 1999); accord Burks v. DuBois,
55 F.3d at 716 (federal habeas review precluded "when a state
court has reached its decision on the basis of an adequate and
independent state-law ground"). "[O]nly a firmly established and
regularly followed state practice may be interposed by a State to
prevent subsequent review . . . of a federal constitutional
claim." Ford v. Georgia, 498 U.S. 411, 423-424 (1991) (internal
quotation marks omitted); accord Brewer v. Marshall, 119 F.3d
993, 1001 (1st Cir. 1993) (quoting Ford).

The waiver rule is firmly entrenched and regularly enforced
in Massachusetts courts. See Commonwealth v. Gagliardi, 638
N.E.2d at 22; Commonwealth v. Harrington, 399 N.E.2d 475, 478
(Mass. 1980) (noting "longstanding rule that issues not raised at
trial or pursued in available appellate proceedings are treated

as waived").  The second Justice's reliance on the waiver rule therefore provides an adequate and independent state law ground that precludes federal habeas review.  The fact that she may have addressed the merits as an alternative basis to reject the pro se ineffective assistance of trial counsel does not avoid the procedural default.  See Boutwell v. Bissonnette, 66 F.Supp.2d 243, 245 (D.Mass. 1999) (collecting cases barring habeas review where state court relies on procedural default in the alternative).

Petitioner fails to show cause for the procedural default. As previously explained, in order to show "cause" the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Murray v. Carrier, 477 U.S. at 488; accord Burks v. DuBois, 55 F.3d at 716-717 (citing Murray v. Carrier, 477 U.S. at 488); Magee v. Harshbarger, 16 F.3d at 471 (quoting Murray v. Carrier, 477 U.S. at 488).  Represented by competent appellate counsel, no external or objective factor prevented counsel from interviewing Holbrook and discovering the public housing assistance by the police assuming for purposes of argument that such police assistance existed.  Appellate counsel's performance did not rise to the level of a Sixth Amendment violation.

Failing to show cause, it is not necessary to address prejudice. For previously stated reasons, petitioner fails to show a fundamental miscarriage of justice. Ground six does not provide habeas relief based on the procedural default.

In the alternative, the claim does not survive de novo review on the merits. See, e.g., Jewett v. Brady, 634 F.3d at 77 (bypassing procedural default doctrine and addressing merits because "'doctrine is not technically jurisdictional'" and a merits review is "'easily resolvable against the habeas petitioner'"). The second Justice reviewed Trooper Coppenrath's affidavit and found it credible. She did not credit Holbrook's affidavit. (Docket Entry # 60, Ex. L, A. 119) ("I do not credit Ms. Holbrook's affidavit"). Trooper Coppenrath averred that he did not offer Holbrook any rewards or inducements in exchange for her testimony.

The presumption of correctness in 28 U.S.C. § 2254(e) applies not only to the findings of fact underlying the state court's decision but also to fact findings "which might be determinative of new legal issues considered by the habeas court." Teti v. Bender, 507 F.3d at 58. The presumption also applies when conducting de novo review. See Yeboah-Sefah v. Ficco, 556 F.3d at 80 ("the trial court made several factual

findings relevant to the instant claim to which, even when reviewing the legal issues de novo, we are nevertheless required to defer," citing 28 U.S.C. § 2254(e)(1)); see, e.g., Gruning v. DiPaolo, 311 F.3d 69, 70-71 & n.2 (1st Cir. 2002) (applying de novo review but applying presumption of correctness to facts found by state court).  Recognizing that the second Justice did not conduct an evidentiary hearing, this court still finds that petitioner fails to rebut the presumption of correctness that attaches to the credibility finding by the second Justice.

As explained in section III, under Strickland, the petitioner has the burden to show by a preponderance of the evidence that:  "(1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different."  Smullen v. United States, 94 F.3d at 23; accord Gonzalez-Soberal v. United States, 244 F.3d at 277.  The absence of promises, rewards and inducements offered by the lead police investigator who interviewed Holbrook prior to the trial dispels the existence of prejudice under Strickland.  Petitioner fails to show that there is a reasonable probability that the result of the proceeding would have been different had trial counsel made a discovery motion for promises, rewards and inducements.  Petitioner posits

that, "had the jury heard the evidence that the police who are part of the prosecution gave a material inducement to Ms. Holbrook by having her moved from being back more than a year on to public housing waiting list to getting public housing in three months," the jury may have "found the petitioner not guilty." (Docket Entry # 54, p. 64). The facts found by the second Justice reject the existence of such inducement given by police. At most, the facts show that the victim witness advocate contacted the prosecutor by email reflecting that the case worker contacted the victim witness advocate to see if she could obtain a copy of a police report from South Carolina showing Vernon Campbell's abuse of Holbrook. (Docket Entry # 60, Ex. L, A. 109 & 119). Such evidence falls significantly short of a police inducement to accelerate section 8 public housing for Holbrook. Ground six fails on the merits.

VIII. <u>Ground Seven</u>

Petitioner next seeks leave to amend the petition to include the claim in ground seven that the erroneous admission of highly prejudicial hearsay testimony by Holbrook violated petitioner's right to confront witnesses. (Docket Entry # 56; Docket Entry # 57, pp. 6-11). Respondent opposes amendment because the claim is untimely and does not relate back to the claims in the original

petition.  (Docket Entry # 70).

Ground seven involves the trial testimony of Holbrook
regarding petitioner's inculpatory statements.  The statements
Holbrook recited to the jury include petitioner's statement that,
"He was going to stick up the cab driver.  The cab driver got
scared, tried to call the police; but the cab driver was going to
jump out the car" and [sic] "shot him."  (Docket Entry # 8, Ex.
F, Tr. III-128).  In ground seven, petitioner submits that
"Holbrook did not hear the petitioner make these statements, but
rather, she was told by Mr. Campbell that the petitioner made
them."  (Docket Entry # 57).  Petitioner therefore asserts that
the statements constituted highly prejudicial hearsay testimony
and violated petitioner's right to confront Campbell who made the
out of court statements to Holbrook.  (Docket Entry # 57, pp. 6-
11; Docket Entry # 67, ¶ 12E; Docket Entry # 68, ¶ 12E).

Section IV sets out the relevant law which need not be
repeated.  The confrontation claim in ground seven differs in
time and type from the claims in the original petition.  At most,
a portion of the underlying facts overlap the ineffective
assistance of counsel claim regarding trial counsel's failure to
investigate Holbrook and interview her before the trial.  The
ineffective assistance of trial counsel claim, however, focuses
on the conduct of trial counsel in not interviewing Campbell and
calling him to testify rather than petitioner's inability to

76

confront and cross examine Campbell at trial.

The First Circuit's disallowance of the relation between the original and amended claims at issue in Ciampi eliminates any doubt of the relation back of the confrontation claim in the case at bar. Ciampi considered and rejected the attempt to relate back an ineffective assistance of counsel claim(s) to an original claim even though both claims involved Ciampi's understanding of his rights to appeal and to file collateral habeas petitions. See U.S. v. Ciampi, 419 F.3d at 22-25. The relevant pro se claim in the original petition in Ciampi was "that the district court had failed to inform him during the November 1999 plea colloquy that he was waiving his right to appeal, as well as any right to assert a collateral challenge." Id. at 22. The relevant claim in the amended petition filed by counsel was "that [trial] counsel rendered ineffective assistance *during the plea process* by failing to discuss with him (i) that acceptance of the plea agreement would constitute a waiver of his appeal and habeas corpus rights, and (ii) whether or not he had a viable appeal from his gambling conviction." Id. at 23 (emphasis in original). The Ciampi court distinguished the claims on the basis that the timely claim involved the district court's failure during the plea colloquy to make an adequate inquiry and the untimely claim involved counsel's failure to discuss the ramifications of accepting the plea during the plea process. Id. at 23-24.

Indeed, under the abuse of discretion standard that applied, the Ciampi court posited that "the district court did not *remotely* abuse its discretion in determining that the amended Ciampi claims did not relate back to the pro se petition." Id. at 24 (emphasis added).

Here too, the claim based upon a violation of petitioner's right of confrontation in light of Holbrook's trial testimony and the inability to cross examine Campbell does not relate back to the timely ineffective assistance of counsel claim based upon trial counsel's failure to interview Holbrook. Ground 3(b) in the original petition faults trial counsel for not investigating and interviewing Holbrook. Ground seven faults the admission of Holbrook's testimony as hearsay and concerns petitioner's inability to cross examine Campbell at trial. The focus of ground seven upon the admission of hearsay testimony at trial and the inability to confront and cross examine Campbell and the focus of ground 3(b) upon the inactions of trial counsel in not interviewing Holbrook or not calling Holbrook to testify differentiate the two claims in time and type as not arising from a common core of operative facts. Hence, it is not appropriate to amend the original petition to include ground seven.[34]

IX.  Ground Eight

Petitioner seeks to amend the original petition to include

_____

[34] Equitable tolling also does not apply to ground seven.

ground eight.  (Docket Entry # 67, ¶ 12F).  Liberally construing
the filings in light of petitioner's pro se status, ground eight
alleges that the Holbrook affidavit contains newly discovered and
available evidence.  (Docket Entry # 57, pp. 12-14; Docket Entry
# 67, ¶ 12F; Docket Entry # 68, ¶ 12F).  The new evidence
consists of Holbrook's averment that she was afraid she would go
to jail if she did not testify against petitioner.  (Docket Entry
# 57, p. 13; Docket Entry # 30, ¶ 6).  Petitioner also points out
that Holbrook attributed the statements she heard from Campbell
as statements she heard from petitioner.  (Docket Entry # 57, p.
12; Docket Entry # 30, ¶¶ 5, 8 & 11).  Respondent submits that
the claim does not relate back to the original grounds in the
petition.  (Docket Entry # 70).

For reasons similar to those expressed in the preceding
section, the new evidence "claim" or ground for relief does not
depend on the same core facts as any of the claims in the
original petition.  Given the absence of a common core of
operative facts that unite this "claim" with grounds one, two,
3(a) or 3(b), ground eight does not relate back to original
petition and is therefore untimely.  As with the other untimely
claims, equitable tolling does not apply.

X.  Evidentiary Hearing

As a final matter, petitioner moves for an evidentiary hearing. (Docket Entry # 61). He submits that an evidentiary hearing would establish his actual innocence with testimony from Holbrook about being given the incentive of public housing by police to testify falsely. She would also testify that her testimony at trial was what Campbell told her petitioner said and it was not what petitioner said to Holbrook directly. (Docket Entry # 1).

The AEDPA bars an evidentiary hearing in federal court unless a petitioner shows that his "claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). In presenting the second new trial motion, CPCS counsel presented affidavits, including Holbrook's affidavit. The second Justice denied the claim challenging the admission of the hearsay evidence through Holbrook as waived. The second Justice noted and this court agrees that the issues were known or knowable to appellate counsel. Appellate counsel made an insufficient effort to interview Holbrook and obtain the facts from Holbrook. The email to the prosecutor was also known or discoverable through the exercise of reasonable diligence.

Section 2254(e) therefore bars petitioner's attempt to seek similar facts through an evidentiary hearing before this court.

Petitioner nonetheless contends that section 2254(e) does not apply where, as here, he is using the facts from Holbrook to establish his actual innocence on a defaulted claim. He points out that the jury relied on Holbrook's testimony to find petitioner guilty of murder and of attempted armed robbery to support felony murder. It is true that the second Justice denied the admission of hearsay claim as waived. It is not true, however, that section 2254(e) does not apply.

The Supreme Court's April 2011 decision in Cullen clarifies that section 2254(e) applies to state court claims that were not adjudicated on the merits, such as the "gateway actual innocence claim" identified by petitioner (Docket Entry # 61). Cullen v. Pinholster, 131 S.Ct. at 1401 ("§ 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court"). The Cullen Court held that "evidence introduced in federal court has no bearing on § 2254(d)(1) review" and that "a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." Id. at 1400.

Petitioner also submits that the state court made factual findings without the benefit of an evidentiary hearing and that

such factual findings are unreasonable under "28 U.S.C. §
2254(d)(1)." (Docket Entry # 61). To the extent petitioner is
raising a claim under section 2254(d)(2), the determinations made
by the first and second Justices and the SJC were not
unreasonable determinations of the historical facts. <u>See</u>
<u>generally</u> <u>Dolinger v. Hall</u>, 302 F.3d 5, 8 (1st Cir. 2002)
(discussing reach of section 2254(d)(2); <u>Ouber v. Guarino</u>, 293
F.3d 19, 27 (1st Cir. 2002).


## CONCLUSION

In accordance with the foregoing discussion, this court
**RECOMMENDS**[35] that respondent's motion to dismiss (Docket Entry #
58) be **ALLOWED** and that the petition be **DISMISSED.** The motions
to amend (Docket Entry ## 56, 64 & 67) are **DENIED** except with
respect to ground six and the motion for an evidentiary hearing
(Docket Entry # 61) is **DENIED.**


　　／s／ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[35] Any objections to this Report and Recommendation must be
filed with the Clerk of Court within 14 days of receipt of the
Report and Recommendation to which objection is made and the
basis for such objection. Any party may respond to another
party's objections within 14 days after service of the
objections. Failure to file objections within the specified time
waives the right to appeal the order.